77 160'
151 350

77 160
159 139
159 574

77 160
201 496

77 160
23 SC ⁵556

77 160
29 SC ⁷196

## Cox *et al. versus* Rogers.

1. One accepting a benefit under a will, is estopped from asserting a claim repugnant to its provisions.

2. A testator directed, "my wife is to have the whole of my personal property to enable her to raise, support and provide for the younger part of my family, and at the death of my wife, what part of my personal property is then to be had shall be equally divided among my daughters; and I wish it. to be fairly understood that my personal property should descend and be equally divided among my daughters." *Held*, to be an absolute gift to the wife.

3. The testator also provided, "I do will to my son, his heirs and assigns, my farm, &c., subject to my wife's thirds," &c. The wife owned the farm. She accepted and retained the legacy of the personal property. *Held*, that she, and her heirs after her death, were estopped from claiming the farm.

4. The wife, on her administration account as executrix, took credit: "By balance of personal property retained by the executrix according to the will." *Held*, to be unequivocal evidence of her election to take the legacy under the will.

5. Such election to be binding must be evidenced by unequivocal acts clearly proved, must be made with a full knowledge of the facts, and the burden of showing this is upon him who alleges that an election has been made.

6. The legal presumption is that the wife knew that if she accepted the legacy she would be estopped from claiming the farm as her own.

7. Whether the facts constitute an estoppel is a question of law for the court.

8. Declarations of the wife that she held the land as her own and had made no election, would not avail if made after a great lapse of time, although the election had been made in ignorance of her rights.

9. Bradfords *v.* Kents, 7 Wright 474, adopted.

November 18th 1874.  Before AGNEW, C. J., SHARSWOOD, WILLIAMS. MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Washington county:* of October and November Term 1874, No. 80.

This was an action of ejectment, commenced March 28th 1872, by Rose Ann Cox and a number of others, against Patrick Rogers, for seven undivided ninth parts of a tract of 300 acres of land in Donegal township. The ·plaintiffs and the defendants were the children and descendants of children, of·Francis Rogers and Elizabeth Rogers, his wife; the plaintiffs representing seven of nine.

John Hupp, Sr., some time before the beginning of this century, was the owner of several adjoining surveys, making in the whole about 1375 acres, the land in dispute being part of these surveys. John Hupp, Sr., died about the time above mentioned, intestate, leaving to survive him four children, viz.: John Hupp, Jr., Margaret, intermarried with John Titus, Mary, intermarried with Thomas Smith, and Elizabeth, intermarried with Francis Rogers. Francis Rogers was in possession of the land in dispute about the year 1800; he lived on it till his death, about May 1829, leaving his wife and nine children to survive him.  By his will, dated No-

[Cox v. Rogers.]

vember 17th 1825, and proved May 29th 1826, he provided, amongst other things, as follows:—

"I do will and bequeath to my beloved wife Elizabeth, the whole of my real estate as long as she remains my widow, for the benefit of my young children, and to enable her to raise, school and provide for, and they are to get each of them when they get married as much as my daughters got when they left me; and my wife is to have the whole of my personal property to enable her to raise, support and provide for the younger part of my family as above stated; and at the death of my wife what part of my personal property is then to be had shall be equally divided among my daughters, which is now nine in number; and I wish to be fairly understood that my personal property should descend and be equally divided among my daughters.

"Item second. I do will and bequeath to my son John Rogers, and his heirs and assigns, my plantation in Findley township, that I bought from Charles Mays, containing 100 acres, strict measure, subject to my wife's third during her natural life, if she sees fit to call on him or stand in need of it.

"Item third. I do will and bequeath to my son Patrick Rogers, and his heirs and assigns, my farm in Donegal township, that I now live on, subject to my wife's thirds during her natural life; and my wife is to have my mansion house to live in so long as she remains my widow; and I do constitute my wife, Elizabeth Rogers, and my son, John Rogers, in whose fidelity I very much confide, my executors," &c.

John Rogers died shortly after the testator; his descendants are not included amongst the plaintiffs.

On the 30th of December 1829, Elizabeth Rogers "exhibited into the register's office" her account as executrix, &c., of Francis Rogers, deceased.

She charged herself with all the goods, &c., according to an inventory, filed June 23d 1829, . . $1100.60
Also with sundry notes due said estate, . . . 752.39

————————
$1852.99

She took credit for sundry payments amounting to . . . . . . $60.68¼
Also: "By balance of personal property retained by the executrix according to the will," 1792.30¾
————————$1852.99

This account was signed by her and sworn to before the register. He also certified, under his seal of office, that the account had been duly examined, passed, &c., and that he had given notice of the settlement of the estate to all legatees and others concerned, or agreeably to the Act of Assembly, &c.

27 P. F. Smith—11

[Cox *v.* Rogers.]

Elizabeth Rogers died intestate in 1866, and the plaintiffs alleging that the land was her property, claimed the seven-ninths as her heirs-at-law.

The principal questions in the case was whether the acts of Elizabeth Rogers were an acceptance of the legacy to her under her husband's will, and if so whether the plaintiffs were therefore estopped to claim the land, it having been devised by Francis Rogers to the defendant.

Some time in 1855, Vankirk, a surveyor, at the request of the children and heirs of John Hupp, Sr., made a survey of the whole body of land; at that time the heirs produced to him a plot of an original amicable division of the land amongst the heirs of John Hupp, Sr., Elizabeth being at the time of the survey in possession of that part in dispute; the heirs made mutual conveyances in fee to each other of their respective parts, by quit-claim deeds; one of the deeds was to Elizabeth Rogers for the part in dispute; the deeds were dated January 8th 1856.

The case was tried, February 23d 1874, before Acheson, P. J.

The plaintiffs gave evidence that Mrs. Rogers had possession of the land from her husband's death till her own; the defendant, with others of the children, lived on the land with their mother, the defendant, until about 1839, he then married and lived elsewhere for about four years; his wife having died he returned to this land; again married, and again left there and lived on other property of his own till his mother's death; after her death he took possession of this land.

They gave evidence also of a lease of the land to the defendant from his mother; also, that the balance of the personal estate of Elizabeth Rogers in the hands of her administrator was $3092.47, and that she had no revenue except that derived from the farm.

They gave evidence that the defendant had declared that his mother would never make a deed to him for the land; that she had said that the land was to be divided amongst the heirs equally.

Isaac Deeds testified that defendant said to him that he never claimed the land as his own; witness told Mrs. Rogers she had better will the land to Patrick; she said, " Never, never—he shall not have the farm; she wanted all her children to become equal;" she said she would let witness know if she desired to make a will; that if defendant wanted it he might buy it from her.

The defendant testified that he had not had such conversation with Deeds as had been spoken of.

In the course of the trial, there were offers by plaintiffs to prove that while Mrs. Rogers was in possession of the land, she declared she was holding it as her own, that it belonged to her; for the purpose of showing the character of the possession and also of showing title under the Statute of Limitations. The offers were rejected and bills of exception sealed.

[Cox *v.* Rogers.]

The plaintiffs submitted a number of points, amongst others :—

1. The conveyance in 1856 by the heirs of John Hupp, Sr., to Mrs. Rogers then vested the title in her, and the plaintiffs were entitled to recover.

The court answered : " This is true; and if there were nothing more in the case, the plaintiffs would be entitled to recover on their title as exhibited; but the question of election arises by which they may be estopped."

2. " If the jury believe that Elizabeth Rogers, deceased, for more than twenty-one years prior to her death, in 1867, occupied the land in dispute, claiming it as her own, and that said occupation was notorious, hostile, continued, exclusive, and adverse to all other alleged title or right to said land, and that the plaintiffs are the heirs at law of said Elizabeth Rogers, then their verdict should be for the plaintiffs."

The court answered : " If Mrs. Rogers made no valid election under the will of her husband, Francis Rogers, this would be true."

5. " There is no sufficient evidence in the case to show that Elizabeth Rogers did elect to take under the will of Francis Rogers, deceased, in such manner as would estop her from setting up title to the land in dispute."

This point was refused.

11. " If the jury believe that the defendant, with the knowledge that his mother, Elizabeth Rogers, was acting under the will of Francis Rogers, in ignorance of the effect of her said acts upon the title to the land in dispute, and that said defendant at the time knew the legal effects of such acts, yet purposely refrained from informing his mother of the same, he cannot claim *now* that her said acts were such an election under said will as to estop her heirs from claiming the land in dispute."

The court answered : " If the facts proven warranted any such conclusion, it might be so; but if she acted freely and without constraint in making the settlement and taking credit for the balance of the personal estate bequeathed to her in the will, her act was binding and irrevocable."

Judge Acheson concluded his charge, saying :—

" We are therefore of the opinion, upon the evidence, that Mrs. Rogers elected to take under the will of her husband, Francis Rogers, and the plaintiffs are estopped from maintaining their present ejectment suit."

The jury found for the defendant.

The plaintiffs took a writ of error and assigned 11 errors.

The 5, 6, 7 and 9 were the answers to the plaintiffs' 1, 2, 5 and 11 points : the 11 was to the portion of the charge of the court above given.

[Cox *v.* Rogers.]

*D. T. Watson* and *R. Woods* (with whom was *John Aiken*), for plaintiffs in error.—In order to raise a case of election it must be apparent from the face of the will that the testator intended to put the legatee to an election: 2 Story's Eq. Juris., §§ 1086, 1087. The gift to Mrs. Rogers was a trust: Beck's Appeal, 10 Wright 532.

An election *in pais* must be evidenced by unequivocal acts clearly proven: Anderson's Appeal, 12 Casey 480; Light *v.* Light, 9 Harris 412; 2 Smith's Leading Cases 764. To be binding it must be made with a full knowledge of all the facts; Kreiser's Appeal, 19 P. F. Smith 194; Redfield on Wills 748; Bigelow on Estoppel 578, 580; Fitts *v.* Cook, 5 Cushing 596.

*D. J. Wilson*, for defendant in error.—The gift to Mrs. Rogers was absolute to herself: Pennock's Appeal, 8 Harris 268: Reformed Church *v.* Disbrow, 2 P. F. Smith 219; Paisley's Appeal, 20 Id. 153; Jauretche *v.* Proctor, 12 Wright 466. The widow having elected to take the legacy under the will, she is estopped to deny the validity of the devise to the defendant: Bradfords *v.* Kents, 7 Wright 174; Stump *v.* Findlay, 2 Rawle 174; Preston *v.* Jones, 9 Barr 466.

Mr. Justice WILLIAMS delivered the opinion of the court, October 8th 1874.

The main question in this case arises on the last assignment of error. Are the plaintiffs estopped from recovering the land in dispute as the heirs of Elizabeth Rogers by her acceptance of the legacy under the will of her husband, Francis Rogers? It is well settled that if one accepts a benefit under a will, he is estopped from asserting a claim repugnant to its provisions. If then Mrs. Rogers elected to take the personal property bequeathed to her by her husband, it is clear that her heirs are estopped from claiming the land which he devised to the defendant, even if it belonged to her and he had no right to dispose of it. Her husband gave her the whole of his personal property; did she accept the bequest? That she received and retained it is incontestably shown by the account which she settled as executrix. Her husband died in 1829, and his will was proved and letters testamentary issued the 29th of May 1829, and on the 30th of December 1829, she exhibited her account as executrix into the register's office. In it she charges herself with all and singular the goods, &c., which were of the deceased and which had come to her hands, possession or knowledge according to an inventory and appraisement thereof exhibited in the Register's office the 23d of June 1829, . . $1100.60

And with sundry notes due said estate, . . 752.39

Amounting in all to   .   .   .   .   .   $1852.99

[Cox *v.* Rogers.]

And prays allowance for her payments and disbursements out of the same, viz. :

By cash paid sundry persons, . . $60.68¼
By balance of personal property retained by the executrix according to the will, . . 1792.30¾
　　　　　　　　　　　　　　　　　　————$1852.99

This account was sworn to and subscribed before the register the same day that it was exhibited into the office. It was examined, passed and filed by the register, and notice was given by him of the settlement of the estate to all legatees and others concerned agreeably to the Act of Assembly, as appears by his certificate, under the seal of his office, dated March 2d 1830. It is clear then that she received and retained the whole of the personal estate of her husband after the payment of his debts and funeral expenses, and, so far as appears, her right to it has never been questioned. If she retained it, " according to the will," how did she retain it ? The bequest is in these words: "And my wife is to have the whole of my personal property, to enable her to raise, support and provide for the younger part of my family as above stated, and at the death of my wife, what part of my personal property is then to be had shall be equally divided among my daughters." Under this provision she had the right to retain the personal property as legatee because it was given to her by the will. It was not given to her as trustee, for no trust is created by the will. It was hers, as absolutely as if the motive inducing the gift or the purpose for which it was given had not been declared. It was hers, without any liability to account to her children for the use she made of it: Jauretche *v.* Proctor, 12 Wright 466 ; Paisley's Appeal, 20 P. F. Smith 153. In retaining the personal estate then "according to the will" she retained it as legatee. If she did not intend to take it, as legatee, she had no right to it whatever. She took it because she chose to take it, used it as her own, and never retracted her choice. She died in 1866, leaving, as the plaintiffs themselves have shown, personal estate amounting to $3092.47, after paying all her debts. Are her heirs then bound by her acceptance of the bequest ?

If she took the money as legatee and used it as her own, they clearly are. But it is insisted that her election must be evidenced by unequivocal acts clearly proven, and that the burden of showing that she elected to take was on the defendant; and that to be binding it must be made with a full knowledge of all the facts ; and this is unquestionably the law. By what acts more significant or unequivocal could she have evidenced her election, than by declaring that she "retained the personal property according to the will," using it as her own while she lived and never offering to return or restore it to the estate ? After so long a period she would, if living, be estopped by her own account from denying that she

elected to retain it as legatee under the will. Was her election then made with a full knowledge of the facts? She was the executrix of her husband's will and knew the amount of his personal property. She knew all the real estate of which he was or claimed to be the owner—the plantation in Findley township, containing one hundred acres, and the farm in Donegal township on which he lived at the time of his death. If the farm was not his—if it belonged to her, she knew the fact. She knew moreover all the dispositions made by the will; that the whole of the real estate was given to her as long as she remained a widow, and if she married she was to have her "thirds" in it during her natural life; that the plantation in Findley township was devised to the testator's son, John Rogers, subject to her "third" during her natural life, and the farm on which he lived, the land in dispute, to his son, Patrick Rogers, subject to her "thirds" during her natural life, and that she was to have the mansion house to live in so long as she remained a widow. She knew then all the facts on which her rights depended and which could have any influence in determining her choice. Did she know that if she accepted the bequest of the personal estate, she must conform to the other provisions of his will and that she would be estopped from claiming as her own the farm devised to the defendant? The legal presumption is that she did. What then is there in the case to show that in retaining the personal property she did not intend to accept it as legatee under the will? She lived on the farm from the time of her husband's decease until her own death in 1866. Under the will the farm was hers so long as she remained a widow, and she had a right to live upon it; and the fact that she did is entirely consistent with her election to take "according to the will." As already suggested she never offered to return the personal property, but retained it as her own. Nor did she dispose of the land by deed or will. All her *acts* are consistent with her election to take the property according to the will. But it is insisted that her declarations made long subsequently to her acceptance of the bequest, show that she did not intend to take it as legatee; and that if she did, she was not bound by her election because it was made in ignorance of her rights. What then were her declarations as proved and offered to be proved by the plaintiffs? When Isaac Deeds told her, some fifteen or twenty years ago, that she had better will the farm to Patrick, she said "Never, never—he should not have the farm; she wanted all the children to become equal; if Patrick wanted it, he might buy it from her, the land was hers."

The defendant is testified to have said—though he denied under oath that he ever had any such conversation—" that his mother utterly refused to let him have the land, and he knew she never would; that she had said that the land was to be divided among her heirs equally;" and it was offered to be proved, for the pur-

[Cox v. Rogers.]

pose of showing the character of her possession and title under the Statute of Limitations, that while in possession of the land she declared she "was holding it as her own and that it belonged to her." This is the sum and substance of the declarations as proved or as offered to be proved by the plaintiffs. Admitting that they were made, and giving to them their utmost effect, all they show is, that she claimed the farm as her own, and that she did not intend that the defendant should have it, but that it should be divided equally among her children or heirs. They have this extent, no more. They do not show or tend to show that when she elected to retain the personal estate, as shown by her account, that she did not intend to take it as legatee under the will, for nothing was said by her on the subject. If she accepted the bequest and never retracted her choice by an offer to return the money to the estate, her declarations made long afterwards, could not alter the fact of her election to take under the will or change the character and legal consequences of the act. If with full knowledge of the value and character of her husband's estate and of all the facts necessary to a binding choice, she accepted the bequest, she could not afterwards, without a surrender of the property, claim that she did not intend to relinquish the right to the farm as owner : Bradfords v. Kents, 7 Wright 474. The question in that case was whether the widow was barred of dower by her election to take under her husband's will. In delivering the opinion of the court, Mr. Justice Strong said : " But a widow who after having become acquainted with all that is necessary for her to know in order to make a binding election, receives the gift conferred by her husband's will and uses it as her own, is not at liberty to say she did not intend to relinquish dower. Her acts are inconsistent with any other intention. They are not equivocal. She has no right to the gift except as a legatee or devisee, and her taking and using it is an admission that she chooses to take under the will. It necessarily involves an election, and in the case supposed, a case where there is full knowledge, it bars dower. There are undoubtedly decisions that a widow may elect dower even after she has claimed and received the legacy or devise made to her, but she may not receive and hold the benefits conferred by the will of her husband after the extent of her rights has become known to her and then retract her election. In the case before us the widow was an executrix, and acted as such. She took out letters testamentary. It was her duty to inform herself of the situation and circumstances and value of her husband's estate. She must therefore be presumed to have known. All the personalty was spread before her and she took a large portion of it. To no part of it had she any right except as legatee. She took it expressly under the will, used it as her own, and never afterwards until this suit was brought, retracted this act of choice. Not even yet has she returned or offered to

[Cox *v.* Rogers.]

return all that she claimed and received. * * * Her continued possession was rightful if she held as devisee ; it was wrongful if she had made no election, to take under the will. * * * And had her acts of taking and using the legacy and devise been of doubtful import, the lapse of time before she asserted any claim against the will is a pregnant and decisive fact. * * * I know of no case in which it has been held that a lapse of time of more than five years after acts done, which are usually treated as indicating an election, will not be binding upon a widow and prevent her denial of an election ; though the acts were done in ignorance of her rights. Here are seventeen years without ignorance. It would be inequitable for us now to disturb the devisees in remainder or those claiming under them."

These observations apply with equal, if not greater force, to the present case. Here the legatee kept and used the money which she elected to retain according to the will for a period of more than twice seventeen years, with a full knowledge of all the facts on which her rights depended, without retracting her choice or offering to return it, and, from the amount of personal property that she left behind her, died, it is to be presumed, with the greater part, if not the whole of it in her possession. What equity then have her heirs to set aside her election deliberately made, never retracted and evidenced by acts of the most unequivocal character ? Whether the facts constituted an estoppel was a question of law for the court. What fact was there then to be submitted to the jury ? Certainly not the fact whether she received and "retained the personal property according to the will." This was, as already said, conclusively shown by her account. Nor whether she knew the situation, circumstances and value of her husband's estate or the disposition which he made of it by his will. It was her duty to inform herself and she must therefore be presumed to have known. If her subsequent declarations that the land was hers and that she was holding it as her own would have set aside or shown that she had made no election, then whether she made such declarations or not, would have been a question for the jury. But her declarations cannot have this effect if after such a lapse of time, she would if living be estopped from denying the fact of her election as shown by her account, and from questioning its validity, even if it was made in ignorance of her rights.

But it is insisted that if she was estopped by her acceptance of the bequest, from setting up any claim that she then had to the land, that she was not estopped from acquiring title to it, if it did not belong to her husband, and that under the deeds executed by the heirs of her father John Hupp, Sr., in 1856, she acquired a good and valid title to the land. But the deeds, as the evidence shows, were not made for the purpose of conveying or vesting any new interest or estate, but for the purpose of assuring and furnishing written evi-

[Cox v. Rogers.]

dence of the title which had long before vested in the heirs respectively by the parol partition of the estate between them. The right to their respective purparts vested when the partition was made, and was confirmed and made impregnable by half a century's possession: Calhoun *v.* Hays, 8 W. & S. 127; McMahan *v.* McMahan, 1 Harris 376; Rider *v.* Maul, 10 Wright 376. The joint estate of the heirs in the land was severed and divested by the partition, and they had no interest in each other's purparts which they could convey. The deeds which they executed, were deeds of mutual release and quit-claim, and their whole purpose, as already suggested, was not to convey any new interest or estate, but to confirm and furnish written evidence of the title to their respective purparts which vested in them by the parol partition. It is clear that she could acquire no title as against the devisee in remainder by such a deed.

Again, it is contended that if she acquired no title under the deed, she acquired title under the Statute of Limitations by living on the land and claiming and using it as her own, for a period of thirty-six years after the death of her husband. If the land belonged to her husband, it is certain that she could acquire no title as against the devisee in remainder by adverse possession. Under the will of her husband, she had a life-estate in the land if she so long remained his widow, and as she did not marry, her possession could by no possibility be adverse as against the devisee. He had no right to its possession until her death or marriage, and until one or the other of these events should happen no adverse possession of the land could be taken or held as against him. If the land belonged to her it is equally clear that she could acquire no title to it by adverse possession. Nor could she avoid the effect of the estoppel arising from her acceptance of the bequest under her husband's will, by holding the land during her life in accordance with the will. The whole question in the case is therefore one of estoppel; and the court below rightly instructed the jury that the plaintiffs, as the heirs of Elizabeth Rogers, were estopped from recovering the land of which she was alleged to be the owner, by her election to take the personal property bequeathed to her by the will of her husband.

The other assignments of error, therefore, are immaterial and need not be considered.

Judgment affirmed.