# Eyre's Appeal.

1. A devise of real estate, charged with the payment of existing incumbrances on certain other real estate limited under the provisions of a deed of trust to persons other than said devisee, imposes a personal charge upon the devisee accepting such devise, as well as a lien on the property devised, in favor of the *cestuis que trustent* under such deed.

2. Such testamentary provision is, in effect, a bequest of the amount of such incumbrances for the use of said *cestuis que trustent*, and they can enforce payment thereof by sale of the property charged, by petition in the Orphans' Court.

3. A person having a power of appointment as to certain trust property on which there were incumbrances, made a deed settling the property

[Eyre's Appeal.]

to the use of his sister for life, and at her death or marriage, to the use of other parties, and authorizing her to suffer the incumbrances to stand while she lived, and if necessary, to create new ones to discharge the old. Eight days later he made a will, in which he devised and bequeathed the residue of his estate to the same sister charged with the payment of the mortgage debts upon this trust estate, without any provision or qualification as to the time of payment. The sister accepted the benefit of the will:

*Held,* that the two writings could not be read as one instrument, that their provisions were conflicting, and could not both be carried into effect, and that the last was the law for the parties, and that the directions of the will must therefore be carried out.

*Held,* also, that the deed defined the persons for whose use the trust property was held, but that they were the beneficiaries of the provision in the will, that the incumbrances on this property should be paid out of testator's residuary estate, which provision was the same in effect as a bequest of so much money to them. The fact that it was necessary for them to produce the deed, with other evidence, to establish that they were entitled, as legatees, was no reason for saying that their interest is derived from the deed.

4. In such case, where the holders of the mortgages on the trust property were not urging payment, and no sales were made of the land charged with the burden of discharging these obligations, the court might well refuse immediate action, as delay, for a reasonable time, would be of little, if any, prejudice to those entitled to the trust property on the termination of the life-estate. But in this case, seventeen years having elapsed since the death of the testator, and portions of his residuary estate having been sold, and having realized several thousand dollars more than the incumbrances, one portion having been sold by judicial process which discharged all liens, it was

*Held,* that there was no excuse for demanding further time, and that the legatees had a right to ask that the incumbrances be discharged at once, and that they be freed from the danger and inconvenience of watching for judicial sales, and the trouble and expense of contests for the proceeds in order to protect their interests under the will.

5. Whether a legatee is entitled to a decree in the Orphans' Court, fixing personal liability for the legacy upon the devisee who has accepted land charged with payment of the legacy, not decided.

6. *Semble,* that where a petition presents a meritorious case, leave will be granted at any stage of the proceedings so to amend the prayer as to ask, in a formal way, for the relief appropriate to the case.

April 1, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN, and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

APPEAL from the Orphans' Court of *Philadelphia county:* Of January Term, 1884, No. 111.

This was an appeal by John Eyre, et al., from a decree of said court, dismissing their petition, filed November 25, 1882, as amended December 30, 1882, praying that Mary Y. Eyre, devisee under the will of Jehu W. Eyre, deceased, be decreed to pay incumbrances on certain real estate, or in default thereof that said real estate be sold to pay the same.

The petitioners were *cestuis que trustent* under a certain

deed of trust, hereinafter mentioned, and claimed to be entitled to the benefit of a provision in the will of Jehu W. Eyre, that incumbrances on the real estate conveyed by said deed of trust should be discharged by said Mary Y. Eyre, residuary devisee under said will. The respondents were the said Mary Y. Eyre, and the owners of portions of said residuary real estate purchased by them from said Mary Y. Eyre, and at judicial sale. Answers were filed by said respondents, and the cause was referred to an examiner, from whose report the material facts appeared to be as follows :

On March 7, 1839, Lydia Eyre, being seised in fee of certain real estate in the city of Philadelphia, by indenture of that date, recorded June 6, 1850, granted and conveyed the same to Edward W. Gorgas and his heirs, in trust, inter alia, for the use of said grantor for life, and from and after her death for the use of Jehu W. Eyre for life, with a power of revocation and appointment in Jehu W. Eyre by deed. Lydia Eyre died in 1850, leaving the said Jehu W. Eyre surviving her.

On July 20, 1865, Jehu W. Eyre, by indenture of that date, recorded August 4, 1865, revoked the said trusts, and granted said real estate to the said Edward W. Gorgas and his heirs, in trust (1), for the use of said grantor for life (2), at his death for the use of Mary Y. Eyre for life, or so long as she remained unmarried (3) at her death, or upon her marriage, to sell said real estate, and, after paying and discharging all the mortgages and other incumbrances on said premises (which shall not have been before discharged) to distribute the proceeds, as respects four fifths thereof, to and among the several parties who are the petitioners and appellants in this case. Said deed reserved in the grantor a power of revocation and appointment by deed.

The said Jehu W. Eyre died November 24, 1865, leaving surviving the said Mary Y. Eyre, having by his last will and testament, dated July 28, 1865, (eight days after the date of the last recited deed of trust) provided, inter alia, as follows:

"*Third.* All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever the same may be situate, and which I may die seised, possessed of and entitled to, save and except my house and lot No. 1012 Palmer street, in the 18th Ward of the city of Philadelphia, I give, devise and bequeath unto my beloved sister, Mary Y. Eyre, her heirs, executors, administrators and assigns, forever, *charged however with the payment of all and every mortgage, debt or debts, or other incumbrances which, at the time of my decease may be* secured upon certain premises formerly belonging to my aunt, Lydia Eyre, and by her, the said Lydia Eyre, conveyed to Edward W. Gorgas, in trust by deed dated the

[Eyre's Appeal.]

7th day of March, A. D. 1839. . . . . . and by further deed of revocation and appointment, bearing date the          day of          Anno Domini 1865, duly executed, acknowledged, and now lodged for record in the office aforesaid, vested in the said Edward W. Gorgas, in trust for certain new and other uses, and purposes therein mentioned and declared." Other provisions of the will, and of said deeds of trust are recited in the opinion of this court.

The testator appointed as his executrix the said Mary Y. Eyre, who accepted the office, and took possession of said residuary real estate as devisee. At the time of testator's death there were certain mortgages existing upon said real estate, limited under the said deed of trust. The personal estate of Jehu W. Eyre was only sufficient to pay his funeral expenses. Mary Y. Eyre afterwards sold the greater portion of said residuary real estate, but did not pay or discharge said mortgages, existing on the real estate limited under said deed of trust.

The prayer of said petition, as amended, was that the said Mary Y. Eyre be ordered to pay and satisfy said mortgages or in default thereof that she, and the several purchasers of real estate from her which she acquired under said devise, show cause why said real estate devised to her as aforesaid should not be sold for the payment thereof. The case was heard on petition, answers and proofs, and the petition was dismissed by the court, in the following opinion, by ASHMAN, J.:

"Out of the charge imposed by the testator's will upon the devise to Mary Y. Eyre, there undoubtedly arose, when she accepted the gift, a personal liability on the part of that devisee. In order to give the utmost advantage to the petitioners, we may assume, under the cases of Lobach's Estate, 6 Watts, 167, Hoover v. Hoover, 5 Barr., 351, and Snyder's Appeal, 25 P. F. Smith, 191, that the liability was an immediate one. We waive, in this concession, the fact that no demand for payment has been made by the holders of the incumbrances, and that no time for the payment is fixed by the will. Before, however, the petitioners can adjust this principle to the relief which they pray for, they must show a vested interest as legatees, and an actual or possible injury to that interest. They practically admit the first point by bringing their bill under an Act (February 24, 1834, § 59, Pur., 450) which confines its remedies to legatees. Yet the face of their petition discloses that their interest in the estate of the testator is derived not from his will, but under a deed of trust to which he was a party in his life time. Recourse in the dilemma is had to the subtle argument that the charge imposed by the will upon the lands devised to the respondent,

was a legacy to the petitioners, because it was in ease of the
estate which they took under the deed. We are not fairly
bound to consider a proposition which so manifestly con-
founds the plainest legal terms, and would pervert the mean-
ing of a statute. If, however, we could read as one instrument,
the deed of July 20, 1865, and the will of this testator, we
should probably find that the rule which imposes upon the
devisee a present liability would bend in that case to the
intention which we should be compelled to ascribe to the
testator. Nothing in the trust deed commands the discharge
of the incumbrances in the lifetime of the devisee. On the
contrary, the *cestui que trust*, who is the present respondent,
is permitted to create a new mortgage in lieu of the charged
incumbrances, and in the power of sale to the trustee, pro-
vision is made for cancelling the incumbrances, which may be
subsisting at her death.

" The want of a title to relief in these proceedings is not
helped by the allegation of injury to the petitioners. The
devisee, admitedly, has parted with portions of the charged
estates, but those portions remain incumbered in the hands of
the purchasers. One tract was sold under judicial process,
by which the lien of the mortgages was lost; but the only
result was to shift the remedy of the petitioners from the
land to the proceeds. Putting aside, in conclusion, the ques-
tion of interest and that of injury, the specific relief which is
sought is, in any event, beyond the province of the court, and
is not afforded by the Act of Feb. 24, 1834, even to a legatee.
The petition prays that the respondent may be decreed to pay
the amount of the incumbrances, and in default of such pay-
ment, that her life estate under the deed, may be sequestrated.
It is very clear that such personal liability could be enforced
only in the common pleas. In every case which has arisen
under the Act of 1834 (Snyder's Appeal, *supra;* Strickler *v.*
Sheaffer, 5 Barr., 240 ; Hart *v.* Homiller's Executor, 11 Har-
ris, 39; Fishburn's Appeal, 10 W. N. C., 489) the jurisdiction
of the Orphans' Court has been held to attach, not to the
person but to the land, and in the words of the Act, the decree
has had for its object to enforce " the payment of the legacy
out of such real estate."

" The petition is dismissed."

The petitioners took this appeal, and filed the following as-
signments of error :—

The court erred—

1. In dismissing the petition of petitioners.

2. In decreeing that the court had no jurisdiction of the
cause of complainants under the Act of February 24, 1834.

3. In not ordering and decreeing that the respondent pay

the mortgage debts upon the property of complainants charged upon the lands accepted by her under the will of Jehu W. Eyre, deceased, and in default of such payment that the charged lands be sold in the inverse order of the sales made by respondent to the terre tenants.

4. In not sustaining the petition of complainants and decreeing that the properties charged with the payment of the mortgage debts against the property of complainants under and by virtue of the will of Jehu W. Eyre, deceased, be sold for the payment of said mortgages in default of payment by the respondent or the terre tenants.

5. In not treating or considering the prayer of the complainants in their amended petition wherein they prayed that the charged lands be sold for the payment of the mortgages upon the trust premises.

6. In not decreeing that the real estate accepted by respondent under the will of Jehu W. Eyre, deceased, unsold by her, should be first sold for the payment of the mortgage debts charged thereon, and that in case of a deficiency that the remaining charged properties be sold in the inverse order of their sales by the devisee (Mary Y. Eyre) for the payment of said mortgages.

7. In not decreeing that respondent (Mary Y. Eyre) pay or cause to be paid the mortgages charged upon the real and personal estate accepted by her under the will of Jehu W. Eyre, deceased, and that her estate be first exhausted before recourse could be had to the properties sold by her to terre tenants; that in default of realizing sufficient money to pay said mortgages from her estate, that then in default of payment of the unpaid portion of said mortgages by the terre tenants that the properties charged in the hands of the terre tenants be sold in the inverse order of purchases made by them until a sufficient amount be raised to pay all of the unpaid portions of said mortgages.

*W. Horace Hepburn* and *H. F. Hepburn*, for appellants.— The petitioners were legatees under the will of the amount charged on the devise to the appellee; hence within the Act of 1834: Downer *v.* Downer, 9 Watts, 60; Craven *v.* Bleakney, 9 Watts, 19; Mohler's Appeal, 8 Barr, 26; Sheaffer's Appeal, 8 Barr, 43; Horner *v.* Hasbrouck, 5 Wright, 183. The court below declare that "in every case that has arisen under the Act of 1834 the jurisdiction of the orphans' court has been held to attach not to the person but to the land," and for this reason dismiss the petition. Yet the prayer was for "general relief," and the amended petition specifically prays that the charged land be sold. Moreover, the court *has*

authority to make a decree against the persons: Hoover *v.*
Hoover, 5 Barr, 351; Hart *v.* Homiller's Exr., 11 Harris, 43 ·
Strickler *v.* Sheaffer, 5 Barr, 240; Mohler's Appeal, 8 Barr, 26,
Sheaffer's Appeal, 8 Barr, 44; Gibson's Appeal, 1 Casey, 191;
Lobach's Case, 6 Watts, 169; Conard's Appeal, 9 Casey, 47;
Snyder's Appeal, 25 P. F. S., 191; Pierce *v.* Livingston, 30
P. F. S., 99. There being no time mentioned in the will for
payment of the mortgages, the devisee is bound to pay them
within one year of testator's death: Act of February 24,
1834, § 50, Purdon, 449.

*A. Lewis Smith,* for Mary Y. Eyre, appellee.—No one can
present a petition under the Act of 1834 but a *legatee*: Field's
Appeal, 12 Casey, 11; Conard's Appeal, 9 Casey, 47. The
petitioners, in attempting to establish their position as lega-
tees, have to introduce the deed of July 20th, and are then
met by its provisions—entirely antagonistic to their claims.

Mr. Justice TRUNKEY delivered the opinion of the court,
April 21, 1884.

The testator devised all his real estate, except lot No. 1012,
Palmer street, to Mary Y. Eyre, charged with the payment of
all mortgages or other incumbrances which at the time of his
decease should be upon the premises conveyed by Lydia Eyre
to Edward W. Gorgas, in trust, for uses therein mentioned,
which uses were changed by Jehu W. Eyre by deed to said
Gorgas, dated July 20, 1865. He gave the income and rents
of said lot, No. 1012, to said Mary during her life, if she
should remain unmarried, and clothed her with power to sell
the lot and apply so much of the purchase money as neces-
sary to discharge the mortgages, or other incumbrances, on
the trust premises described in said deeds, and obligated her
to invest the residue, if any, in reliable security; she to
receive and enjoy the interest of the money so invested during
life, or until her marriage. She is not bound to sell the lot
unless she should marry, in which event, as executrix, she
must sell, that distribution may be made of the proceeds. It
rests in her own discretion, while unmarried, whether to sell
the lot within her lifetime, and if she sells she may invest the
whole of the purchase money and enjoy the interest or in-
come thereof during life should she choose to do so—the
power to apply it in discharge of the mortgages is unaccom-
panied by the duty. But after her marriage or death the lot
shall be sold, if not already sold, and enough of the proceeds
of sale shall be taken to pay the mortgages and incumbrances
charged upon the real estate devised to her in fee. The tes-
tator contemplated that the lot would sell for enough, or more

than enough, to satisfy the mortgages; but if it should not, the deficit must be paid out of the realty charged with the payment thereof.

The deed by Jehu W. Eyre to Gorgas, dated July 20, 1865, declares that after the death of said Eyre, all the trust estate which had been conveyed to Gorgas, should be for the use of Mary Y. Eyre during life, if she remained unmarried, with power in Gorgas, said Mary consenting, to sell real estate and re-invest the proceeds, or use the proceeds to pay mortgages or other incumbrances; also to raise money by mortgage to pay any or all mortgages or other incumbrances on the said premises. And upon the decease of both said Jehu and said Mary, or upon the marriage of said Mary, Gorgas shall sell the whole of the real estate, and the moneys arising from such sale, after paying and discharging all the mortgages and other incumbrances on the said premises, shall be distributed to certain persons designated in the deed.

Eight days after the execution of the deed the will was executed. They cannot be read as one instrument in all respects. The directions in the deed for payment of the mortgages on the trust estate are superseded by the directions in the will. Other property is charged with the payment, and nothing in the will directs that the charge shall remain without enforcement of payment until the marriage or death of Mary Y. Eyre. By accepting the devise she took it with its burden. The will obligates her to pay the mortgages in case of the trust property—the deed authorized her to suffer the incumbrances to stand while she lives and, if necessary, to create new ones for the purpose of discharging the old. The deed provided that at last the mortgages should be paid out of the trust estate—the will charges the payment upon other property. Both provisions cannot stand, and the last is the law for the parties. The will took effect upon the decease of the testator, and his own interest and power in and over the trust property by the provisions of the deed, indicate a reason for making the change respecting the payment of the mortgages by his will instead of by deed.

It was contended on the part of the appellees that the testator referred to the deed dated March 9, 1865, to Anna M. Heller, for a lot in fee, and that the charge was intended to be in case of that lot for the benefit of the grantee. But in that deed he only revoked the uses and trusts as to the lot therein conveyed, being part of the larger premises described in the deed of March 7, 1839, and declared express intention not to affect, alter or revoke the uses so far as they related to the remaining part of said larger premises. Therefore the uses and trusts created by the deed of March 7, 1839, continued in

force, except as to the lot conveyed to Mrs. Heller, and the will referred to that deed and to a further deed of revocation and appointment, in trust for certain new and other uses; no other deed than that of July 20, 1865, answers the reference.

The deed defines the persons for whose use the property is held, and they are the beneficiaries of the provision in the will that the mortgages and incumbrances upon the property described in the deed shall be paid out of other property. That provision is the same in effect as a bequest of so much money to those persons. They derive their interest in the charge upon real estate for payment of the mortgages, from the will alone. That it is necessary for them to produce the deed with other evidence to establish that they are the persons entitled as the legatees, is no reason for saying that their interest in the bequest is derived from the deed. True, they are the equitable owners of the estate described in the deed, the charge created by the will is in ease of that estate, and payment of the incumbrances as provided by the will discharges that estate forever; but it is as direct benefit to the owners as if the money were given to them to pay the incumbrances.

The mortgagees are not urging payment. Had no considerable time elapsed, and no sales made of the land charged with the payment, the court might well refuse immediate action, on the ground that delay for a reasonable time would be little if any prejudice to the petitioners, and that immediate payment was not contemplated by the testator. The petition was not filed until seventeen years after his death, nor until after the devisee had sold a number of lots for more money than is required to satisfy the charges thereon. The answers of the several purchasers show no desire for delay on their part. It is said in the opinion of the Orphans' Court, that "one of the tracts was sold under judicial process by which the lien of the mortgages was lost; but the only result was to shift the remedy of the petitioners from the land to the proceeds." This fact indicates the possibility of loss, the probability of costs and expenses, by the petitioners, if they are denied relief. There is no reason for subjecting them to the watching for judicial sales of parcels of the land sold by the devisee, and to contests for the proceeds, in order to protect their interest under the will. Sales having been made by the devisee for sums in the aggregate several thousand dollars in excess of the charge, she has no reason for demanding further time.

It is conceded by the parties that jurisdiction for enforcing payment of a testamentary charge on real estate is exclusively in the Orphans' Court. The statute authorizes that court to "proceed according to equity to make such decree or order touching the payment of the legacy out of such real estate as

may be requisite and just." Whether a legatee is entitled to
a decree fixing personal liability for the legacy upon the devi-
see who accepted land charged with payment of the legacy,
will not now be considered, for the question was not presented
at the argument. (See Mohler's Appeal, 8 Pa. St., 26.) The
appellants contended that instead of dismissing the petition
the court should have decreed that the devisee of the real
estate charged with payment of the mortgages should pay the
same, and in default of payment, that said real estate be sold.
This is not the relief specifically prayed for in the original
petition, nor is it asked in a formal and artistic way in the
amended petition. There the prayer is that the purchasers of
the lots from the devisee show cause why the same should not
be sold and the proceeds applied to the payment of the incum-
brances on the trust estate. Had not the petition been dismissed
on the ground that it was devoid of merit and presented no
case within the jurisdiction of the court, doubtless, leave
would have been granted to the petitioners to amend the
prayer, if necessary, at any stage of the proceeding.

The decree dismissing the petition is reversed,
at the costs of the appellee, Mary Y. Eyre,
and record remitted for further proceeding.