## Shapley, Executor, v. Light, Executor

*Joseph P. McKeehan,* for plaintiff.

*E. M. Biddle, Jr.,* and *William R. Johnston,* for defendant.

REESE, P. J., May 18, 1936.—The petition and answer disclose that in 1880 there was conveyed to Carrie C.

Shapley and her sister, Sadie A. Cressler, as tenants in common, a certain house and lot on North Earl Street in the Borough of Shippensburg. Carrie C. Shapley died on April 29, 1928, and her will, dated February 18, 1926, and admitted to probate on May 24, 1928, after directing the payment of her debts and the marking of her grave, provided as follows:

"2nd. I give, devise and bequeath to my sister, Sarah (Sadie) A. Cressler, all of my estate, real, personal and mixed, wheresoever the same may be situate, for and during the term of her natural life, she to have the free use and occupancy of my dwelling-house and lot on North Earl Street in Shippensburg, Pennsylvania, and of the contents thereof while she lives, and also the privilege to sell anything in the house for her own use if she wishes; and I request that she keep up the repairs, insurance and taxes on the said house which is my own, and on the farm which she and I own in partnership.

"3rd. At the death of my said sister, if she survives me, or at my death if she does not survive, I give, devise and bequeath all of my estate to my son, Joseph Stuart Shapley, and to my grandson, J. Donald Shapley, share and share alike."

The house and lot referred to in the second paragraph of the will are the same property in which, under the deed in 1880, already referred to, each sister acquired an undivided one half interest. Sadie A. Cressler, after the death of Mrs. Shapley, took and retained until her own death, in 1935, "the free use and occupancy" of the house and lot on North Earl Street and also conveyed her life estate in the undivided half interest in the farm, declaring in the deed that she had acquired this life estate under Mrs. Shapley's will.

It is contended by the petitioner, the present executor of Mrs. Shapley's will, that Mrs. Shapley, although only the owner of an undivided half interest in the house and lot, devised the entire interest therein, including Mrs. Cressler's undivided half, to Mrs. Cressler for life and

remainder to her, Mrs. Shapley's, son and grandson, and that Mrs. Cressler, by accepting the bequests and devises to her under Mrs. Shapley's will, made a final election to take under the will and estopped herself, her heirs and executors from making any adverse claim to any interest in the house and lot, the entire title to which Mrs. Shapley disposed of in her will. The question therefore is whether Sadie A. Cressler could take and enjoy the life estate given her by her sister, Mrs. Shapley, in all of the latter's property and subsequently deny the entire remainder interest which Mrs. Shapley allegedly undertook to convey to her son and grandson in the house and lot.

"It is well settled that where a beneficiary accepts a legacy it is an election to stand by the provisions of the will: Fulton v. Moore, 25 Pa. 468. As has been stated in Tompkins v. Merriman, 155 Pa. 440, 446: 'The doctrine that one who accepts a benefit under a will is estopped from asserting a claim repugnant to its provisions is founded upon equitable considerations, and has been recognized and applied in this State in many cases, beginning with Stump v. Findlay, 2 Rawle 168, and extending to Zimmerman v. Labo, 151 Pa. 345, and Cumming's App., 153 Pa. 397' ": Hickman's Estate, 308 Pa. 230, 235.

Accordingly, it has been frequently held that one who is given a benefit by a will which gives his property to another person will be compelled to elect between his own property and that given him by the will: Cox et al. v. Rogers, 77 Pa. 160; Eyre's Appeal, 106 Pa. 184; Cooley v. Houston, 229 Pa. 495; Van Dyke's Appeal, 60 Pa. 481; Lewis v. Lewis, 33 Pa. 66; Preston v. Jones, 9 Pa. 456.

Where a beneficiary under a will is thus put to an election, the election must be evidenced by unequivocal acts, done with knowledge of the facts, but the legal presumption is that the beneficiary knew the law that if he accepted benefits under the will he would be estopped from claiming as his own property that which the will undertook to dispose of to others: Cox et al. v. Rogers, supra.

An election is finally made by accepting the benefits under the will: Preston v. Jones, supra; Eyre's Appeal, supra, and other cases cited. An election once made "is final and conclusive . . . and when it is made it binds him and all claiming under him": Melot's Estate, 231 Pa. 520, 523.

While not denying the foregoing principles, it is contended by Mrs. Cressler's executor that the facts herein did not raise an election; that none was made by Mrs. Cressler and that her undivided half interest in the North Earl Street house and lot is a part of her estate. It is first contended that Mrs. Shapley's intent to dispose of that which was not her own must appear from the will itself, without recourse to evidence aliunde the will; that Mrs. Shapley disposed of her property by words of general devise which do not rebut the presumption that the testatrix intended to bequeath or devise only her interest in the property.

We will agree that, where a testator has disposed of his property by words of general devise, no election can arise, for the will cannot be construed to give more than belonged to the testator, and evidence aliunde is not admissible to show that he considered certain property as his own and intended it to pass by his will: Miller v. Springer et al., 70 Pa. 269; Tompkins v. Merriman et al., 155 Pa. 440; Cooley v. Houston, 229 Pa. 495. But this is far different from a situation, which we believe the present case to be, where, although words of general devise are used, the intention of the testator to treat the property of another as his own and that it shall pass under his will appears in the will itself: " . . . the equitable doctrine of election is grounded upon the ascertained intention of the testator, and we can resort to every part of the will to arrive at it": Van Dyke's Appeal, 60 Pa. 481, 491. To put a legatee to his election it is only necessary that he be informed by the will itself that testatrix had undertaken therein to dispose of his property as her own: Miller v. Springer et al., supra. If the "intention

to treat it as his own and dispose of it as a part of his testamentary scheme had appeared upon the face of the instrument", the doctrine of equitable election would apply: Tompkins v. Merriman et al., 155 Pa. 440, 447.

"The intention of the testator to dispose of a larger interest in property than properly belongs to him can not be shown by parol; but, of course, the context of the will may be examined to determine his intent": 2 Alexander's Commentaries on Wills 1183.

"But it should also be observed that even where the language of the gift is thus general, the donor may otherwise show an intention by means of it to bestow the property or interest not absolutely his own": 1 Pomeroy's Equity Jurisprudence (4th ed.) 900.

Applying these principles to the present case, we find in the will such a positive assertion by Mrs. Shapley of ownership of the entire interest in the house and lot that the intention to so treat it and to dispose of the entire interest to her sister for life and remainder to her son and grandson clearly appears from the will itself. This conclusion is strengthened by the assertion or admission that in the farm the testatrix had only an undivided half interest.

It is also contended by Mrs. Cressler's executor that any intention of Mrs. Shapley to treat and dispose of the entire interest in the house and lot as her own must be found in the donative or dispositive language of the will, and that where, as here, such intent appears only in the precatory language of the will, no election can arise. The donative or dispositive language of the present will is substantially: "I give to my sister all of my estate for life, and at her death I give all of my estate to my son and grandson." True, this language does not reveal any intent to dispose of any interest other than that owned by the testatrix, and if this were the only provision in the will the presumption that she intended to dispose of only her interest would prevail. But since the intent of the testatrix is to be gathered from the four cor-

ners of the will, and since the meaning of the expression "all my estate" may be affected by other clauses and dispositions in the will: Zimmerman v. Anders, 6 Watts & S. 218; Price's Estate, 169 Pa. 294; it becomes clear that Mrs. Shapley intended to give a life estate to her sister and remainder to her son and grandson in the entire interest in the house and lot and in her undivided interest in the farm. It may be true that the provision as to occupancy of the house by Mrs. Cressler and the provision as to making repairs and paying taxes and insurance were surplusage, in that these would have been natural incidents of the life estate, but they cannot be ignored in ascertaining the true intention of the testatrix.

As authority for the proposition that election is not raised by mere precatory words, Mrs. Cressler's executor cites a footnote in Bispham's Principles in Equity (10th ed.), page 503, wherein is cited Blacket v. Lamb, 14 Beav. 482, 51 Eng. Repr. 371. In that case, under a settlement made on his marriage, the testator had a power of appointing under his will the proceeds of a life insurance policy among any or all of the children of his marriage. In his will he recited the settlement and the power, and executed it in favor of his six children, and then added certain precatory words "requesting" them to leave the capital of their shares to their own children. The court held that there was no exercise of the power in favor of the grandchildren and that the children were not put to an election between the proceeds of the policy and other devises and bequests made to them. The court said that the will showed clearly that the testator realized he could not legally execute the power in favor of grandchildren; that he exercised the power as given to him in favor of the children, adding the request that they provide for their own children. In other words, he did not attempt to give to his grandchildren that which belonged to his children. We do not regard this case as contrary to our conclusion that precatory words, like any other provision in a will, should be scrutinized and considered in ascer-

taining the intention of the testator when he uses the expression "all my estate".

Further, it is urged, citing McGinnis et al. v. McGinnis, 1 Kelly (Ga.) 496, 503, that "the general principle is . . . that the doctrine of election cannot be raised in favor of *residuary* legatees". We feel that is correct as a general principle, for the reason that a devise or bequest to residuary legatees is usually general in form, and, as already pointed out, the testator will be presumed to have intended to devise or bequeath only his own interest in property. But if, in spite of a general devise or bequest to residuary legatees, there appears from the will itself the intention of testator to treat as his own that which belongs to another, and to dispose of it as his own, an election may arise even though the disposition be to residuary legatees.

The case cited, McGinnis et al. v. McGinnis, supra, states, at page 503:

"To put the legatee to his election, it is only necessary that the instrument should clearly ascertain the property given; that it was manifestly the intention of the testator to dispose of the property which is not his own; and that the gifts are in such terms as are inconsistent with the notion, that the donee can keep his own estate, and also take under the will, without defeating the intention of the testator."

Certainly this is entirely consistent with the views we have already expressed.

Finally, it is contended that a donee's property, to put the donee to an election, must be given by the testator to a third party and not to the donee himself. This may be true, but it does not apply here, for Mrs. Shapley not only gave Mrs. Cressler a life estate in the latter's own undivided interest but devised the remainder in the entire interest, including Mrs. Cressler's interest, to a son and grandson who were certainly third parties.

In some cases, the donee whose property has been given to others and who has received but a life estate has been

put to an election: Cox et al. v. Rogers, supra; Stump v. Findlay, supra. In others, the donee put to his election was a coöwner with the testator of the property devised as an entirety to others: Cooley v. Houston, supra; Waggoner v. Waggoner et al., 111 Va. 325, 68 S. E. 990; and cases cited in 1 Pomeroy's Equity Jurisprudence (4th ed.) 927.

Hence we conclude that under her will Mrs. Shapley disposed of the entire interest in the house and lot, including Mrs. Cressler's undivided interest, and that, by accepting the bequests and devises made to her under the will, Mrs. Cressler made a final election which prevents her, her heirs and executors from claiming any interest in the house and lot, the entire interest in which must be adjudged part of the estate of Mrs. Shapley.

And now, May 18, 1936, it is adjudged and decreed that title to the premises on North Earl Street in the Borough of Shippensburg, fully described in the petition herein, is vested in its entirety in the estate of Carrie C. Shapley and that the estate of Sadie A. Cressler has no interest therein.

From Francis B. Sellers, Carlisle.