P. H. GROESBEECK ET AL. v. M. S. CROW.

No. 7404.

1. **Power to Sell Under Trust Deed Exists While Any of the Debt is Unpaid.**—A trustee with power to sell can act under the power so long as any part of the debt secured by the trust remains.

2. **Legal Title—Trespass to Try Title.**—In this case the pleadings were simply the statutory form in trespass to try title. No facts calling for equitable relief were alleged by either party. In such state of the pleadings the holder of the legal title is entitled to recover, notwithstanding facts which if pleaded would have required equitable adjustment otherwise.

3. **Equities—Credits—Practice.**—Facts tended to show that the trustee had misapplied money which came to his hands for payment upon the note secured by the deed constituting him a trustee: also that other and sufficient securities had been released by the trustee and holder of the note, which in equity would have operated as a release of the property in hands of the trustee. These facts could not be considered under the pleadings. But this judgment should not bar a suit in which equitable relief may be had upon the facts when pleaded.

APPEAL from Erath. Tried below before Hon. C. K. BELL.

*J. H. McLeary,* for appellant. — 1. The court erred in rendering judgment for the defendant upon the ground that the plaintiffs' cause of action could not be maintained in the form of trespass to try title. McSween v. Yett, 60 Texas, 184; McDonnell v. Horell, Posey's U. C., 535; Pyron v. Butler, 27 Texas, 271; Ragsdale v. Gohlke, 36 Texas, 286; Wells v. Dyer, 45 Texas, 432; Wright v. Doherty, 50 Texas, 35; Johnson v. Byler, 38 Texas, 606; McKamey v. Thorp, 61 Texas, 648; Rodriguez v. Lee, 26 Texas, 32; Moehring v. Hall, 66 Texas, 241.

2. A petition in a suit of trespass to try title containing the ordinary allegations, with a prayer for " judgment cancelling and setting aside any and all deeds, conveyances, and encumbrances held by defendant," is sufficient, when not demurred to, to adjust proof of equities arising between the parties that would not be admissible in the ordinary action of trespass to try title. De Witt v. Miller, 9 Texas, 245; Crosby v. Huston, 1 Texas, 225.

3. Simpson holding the first lien on five tracts of land, including the one in controversy, accepted a collateral note equal in amount to his mortgage debt, with the agreement that he would apply the collateral when collected to the discharge of his debt. He having collected the collateral, but having failed to apply it to the mortgage debt, this operated as a release of his lien on one of the tracts bought by appellants from the mortgagor, Simpson having notice of their rights at the time he collected the collateral. 2 Jones on Mort., sec. 1631; Association v. Beaghen, 27 N. J. Eq., 98; 1 Jones on Mort., secs. 722, 728, 603, note 3; Guion v. Knapp, 6 Paige Ch., 35; Burson v. Blackley, 67 Texas, 12.

4. Appellee having purchased the original note and lien after maturity, and with notice and without recourse, he took it subject to all defenses which could have been urged against it in the hands of Simpson. Rev. Stats., art 265; Walker v. Demont, 42 Ill., 272; Bush v. Lathrop, 22 N. Y., 535; Trustees v. Wheeler, 61 N. Y., 88; 1 Jones on Mort., sec. 844; Green v. Warnick, 64 N. Y., 220.

*Lee Young*, for appellee, controverted the propositions urged by appellants.

STAYTON, CHIEF JUSTICE.—This is, in effect, an action of trespass to try title, brought by appellants, in which, however, they asked cancellation of deeds through which appellee claims.

In his answer, appellee asserted title in himself.

Both parties claim the land through J. H. Hyman and wife. The Hymans, on January 11, 1882, while they owned the land, gave a deed of trust upon it, together with four other tracts, making in all 4773 acres, to J. B. Simpson, trustee, to secure a note of $2300, which Hyman owed the Scottish-American Mortgage Company. This company sold the note after its maturity to appellee, who caused the trustee to foreclose, and at the trustee's sale appellee became the purchaser of the lands, except one tract originally granted to Agapito Cayetan, including the tract in controversy, at $500, and on the 3d day of January, 1888, the trustee made to appellee a deed in pursuance of the sale. By virtue of this deed appellee claims the superior title to the land in controversy. Appellants claimed title to the land in the following manner:

J. H. Hyman and Sallie P. Hyman (his wife), by deed dated 6th day of March, 1883, conveyed two-thirds of the land in controversy to J. N. Groesbeeck, Brother & Co., a firm composed of J. N. Groesbeeck, Charles Groesbeeck, and Sallie P. Hyman. Charles Groesbeeck being dead, the other appellants inherited his interest. The firm had organized a ranch, and Sallie P. Hyman conveyed the land to the firm in lieu of her share of money to be advanced. The balance of the land in controversy P. H. Groesbeeck acquired in the following manner:

J. H. Hyman and wife borrowed of appellant P. H. Groesbeeck $3000, and to secure its payment Hyman and wife, on the 24th day of June, 1884, and the 16th day of July, 1884, gave deeds of trust upon one-third of the land in controversy, together with several other tracts of land, to a trustee, and default being made in the payment of the notes, the land was sold by the trustee and bought in by P. H. Groesbeeck, and deed made by trustee to her on the 2d day of August, 1887, she paying at the sale $3523, which was credited on the notes.

Among the tracts of land embraced in the trust deed given to secure the sum due the Scottish-American Mortgage Company was the land in

controversy, as well as another tract granted to Agapito Cayetan, and the tract last named was conveyed by Hyman to O. L. Lockett on July 19, 1882, and to secure a part of the purchase money therefor Lockett executed a promissory note, as follows:

"$2300.                    Meridian, Texas,  July 19, 1882.

"On or before the first day of January, A. D. 1887, I promise to pay to J. H. Hyman, or order, the sum of twenty-three hundred ($2300) dollars, with interest at 10 per cent per annum from date, and payable yearly. The consideration of this note is for 2000 acres of land out of Agapito Cayetan survey and the north half thereof, situated on the headwaters of East Bosque, and a vendor's lien retained thereon.  This note is not to be transferred, but is to be placed in the hands of James B. Simpson, of Dallas, Texas, and by him collected, and the proceeds applied to the payment of a note held by him for collection against said Hyman for $2300, and secured by deed of trust on the north half of the Cayetan survey, besides a number of other surveys.

"O. L. Lockett."

This note was transferred to the trustee, Simpson, by the endorsement of Hyman, and Simpson subsequently collected it, but applied only about the sum of $500 of the money so received on the note due to the Scottish-American Mortgage Company, the residue being applied to other indebtedness of Hyman.

Simpson, at the time he received the money on Lockett's note, released the vendor's lien existing to secure its payment, as did he the lien on same land to secure the sum due the Scottish-American Mortgage Company.

This was done by agreement between Hyman, Lockett, and Simpson long after appellants had bought two-thirds of the land, and long after one of the appellants had loaned money to Hyman, and had taken mortgages on the other third to secure its payment.

Hyman had not fully paid for the land he sold to Lockett when he made that sale, but he subsequently paid for it with money other than that received on Lockett's note, and $1600 of the money received on Lockett's note by Simpson was applied by him to the payment of another indebtedness of Hyman, secured by mortgage on land other than that covered by mortgage to the Scottish-American Mortgage Company to secure the debt of $2300 before referred to.

Appellants contend that Simpson should have applied all the money collected by him on the Lockett note to the note given by Hyman to the Scottish-American Mortgage Company, and that by his failure to do this, and by the release of the mortgage on the land bought by Lockett, the lien on the land in controversy was lost.

The further contention of the parties is thus stated in brief of counsel for appellants:

"Appellants claimed, that at the time appellee Crow bought the Scottish-American Mortgage Company note it had long since become due, and at the time he bought it he had notice of the agreement concerning the collateral note, the indorsement thereof was made without recourse, and he then knew that the proceeds collected from the collateral had been misapplied; that J. B. Simpson, trustee, knowing the rights of appellants would be injured by selling under his trust deed, refused to execute the trust till appellee Crow gave him an indemnity bond, when he sold under the trust deed (without the knowledge and consent of the appellants) and executed to appellee a deed to the lands. Appellants claimed, that by reason of the facts above stated, the prior lien under which appellee claimed became extinguished as to appellants, and the appellants' lien, though subsequent in point of time, carried with it the superior title. Appellee, on the other hand, contended that the collateral note was not placed in the hands of Simpson to pay off the $2300 note, but to protect O. L. Lockett from the payment of prior vendor's lien note for $1000, and the collateral not being placed in Simpson's hands for the protection of appellants, they therefore could not complain of its misappropriation. Appellee also insisted, upon the argument of the case, that if the facts as above claimed by appellants were true, they were not entitled to relief in an action of trespass to try title without specially alleging the facts."

There was some conflict in the evidence as to the purpose for which the Lockett note was placed in the hands of Simpson, and also as to the knowledge or notice to Crow, at the time he purchased the note executed by Hyman, of the purpose of the collateral; but there was evidence, outside of the statements on the face of the Lockett note, from which a jury might have found that Crow knew of the purpose for which the Lockett note was endorsed to Simpson, and that the latter had collected it and had not appropriated the proceeds to the note executed by Hyman to the Scottish-American Mortgage Company.

The cause was tried without a jury, and judgment was rendered in favor of Crow for the land.

There are many questions raised on this appeal which, in view of one controlling question in the case, it will not be necessary to consider.

As before said, this is strictly an action of trespass to try title, in which no facts are alleged that would entitle appellants to any equitable relief whatever.

They simply assert their ownership, possession of the land, and their ejectment by defendant, and pray for "judgment vesting in them the title to the land, for writ of possession and restitution thereof, for judgment cancelling and setting aside any and all deeds, conveyances, and encumbrances thereon held by defendant, and for costs of suit, and for

such other and further relief as may be just or equitable and to which plaintiffs may be entitled.''

Defendant answered by plea of "not guilty," and in addition brought a cross-action of trespass to try title, in which no fact was stated that would entitle either party to any equitable relief whatever.

So standing the pleadings, whoever showed the superior legal title to the land was entitled to a judgment, notwithstanding facts may have existed which, if properly pleaded and proved, would have entitled plaintiffs to some affirmative equitable relief should it appear that appellee held the superior legal title.

The validity of the debt and mortgage from Hyman to the Scottish-American Mortgage Company at their inception is not questioned, and these being prior to the time appellants acquired any interest in the land, and prior to the time mortgages were executed to Mrs. Groesbeeck, a sale under this prior mortgage must be held to have passed the superior title, unless some fact existed which deprived the trustee, Simpson, of the power to sell under the power conferred on him by the mortgage.

If the debt which the mortgage was given to secure had been paid, then the power of the trustee to sell would have ceased, and a person purchasing at a sale made by him, with notice that the debt was extinguished, would have obtained no right. But it is not contended that the note to the mortgage company had been paid in full when the trustee made the sale at which Crow bought.

The note executed by Hyman to the mortgage company was of date January 11, 1882, for $2300, ran five years, and bore interest at the rate of 12 per cent per annum, payable annually; while the note given by Lockett for the same sum was executed July 19, 1882, and was payable on or before January 1, 1887, with interest at the rate of 10 per cent per annum, payable annually.

Lockett's note seems to have been collected as early as July 6, 1885, and if every cent due upon it had been applied to the note executed by Hyman to the mortgage company, this would not have discharged that obligation, and the trustee would still have been empowered to sell the land to enforce the payment of balance due at the maturity of Hyman's note, or at any subsequent time.

If appellants were entitled to have all the money collected on Lockett's note applied to the note given by Hyman to the mortgage company, then they ought at least to have tendered to the holder of that note the balance due on it after the appropriation of the sum paid by Lockett to it. If this had been done, it might be held that Crow, with knowledge of the misappropriation and tender of balance due on the note, acquired no title to the land by this purchase at the sale made by the trustee. Appellants, however, made no such tender.

It is claimed, however, that the failure of Simpson to apply the sum

collected on the Lockett note to the note given by Hyman to the mortgage company, and the surrender of the lien on the land bought by Lockett, placed a burden on the land in controversy which it was inequitable it should bear. And this may be conceded; but did this either cancel the indebtedness of Hyman or take from Simpson the power to sell any of the mortgaged land, not released, to raise money that might be due to that company or to any holder of Hyman's note?

At the time the Lockett note was placed in the hands of Simpson as collateral to secure the debt due to the mortgage company, appellants had no interest in the lands mortgaged by Hyman and wife, and the parties then having any interest in the Cayetan tract might lawfully contract for the discharge of all liens on that tract on payment of the sum secured by Lockett's note.

Appellants, however, subsequently bought two-thirds of the lands, other than the Cayetan tract, and Mrs. Groesbeeck obtained mortgages on the other third, under which that interest, by sale, was also acquired by appellants.

The purchase of two-thirds of the lands and mortgages on the other third were all made before Crow acquired any interest whatever in the note and mortgage given by Hyman and wife to the mortgage company.

The sales under the mortgages given to Mrs. Groesbeeck seem to have been made after Crow bought the note executed to the mortgage company; but under the evidence it must be held that Simpson, who was the agent of the mortgage company, and Crow had knowledge of every right any of appellants had prior to the time the latter bought the note executed by Hyman and wife to the mortgage company.

That Simpson had knowledge of all the rights of appellants when he released the mortgage company's lien on the land sold to Lockett, is clear.

Appellants acquired their rights subject to the prior right of the mortgage company; but after they had acquired such rights, and notice of these was had by Simpson, agent of the mortgage company, the lien on none of the property mortgaged to it could be released without discharging other property held by appellants from the time of the mortgage, either wholly or in proportion the released property bore in value to all the property mortgaged.

Under the circumstances, Crow could acquire no right the mortgage company had lost.

The land sold Lockett is shown to have been of value sufficient to have discharged the sum due on the note executed by Hyman and wife to the mortgage company; and if that sale had been made after appellants acquired right to or interest in the other mortgaged lands, then it ought to be held that the release of the lien on the land bought by Lockett ought to discharge all lien on the other lands covered by the mortgage; and in that event the sale by the trustee of the land in controversy would not

confer right on Crow, who must stand charged with notice of all the rights of appellants.

In such a case appellants would have been entitled to a judgment in this action of trespass to try title, for there would have been no lawful power in the trustee to make the sale at which Crow bought.

Under the facts, however, as they existed, we are of opinion that appellants were only entitled to have the proceeds of the note executed by Lockett applied to the debt due to the mortgage company; but that was their right, which neither the mortgage company nor Crow could defeat by proof of any fact contrary to the plain declaration in the face of the note executed by Lockett.

Instead of so appropriating the money received on that note, the agent of the mortgage company applied $1600 of that fund to another note executed by Hyman, secured by mortgage on other lands, long after the rights of appellants had attached to the lands in controversy.

These transactions raised equities between the parties which might have been enforced; but as power existed in the trustee to sell the lands so long as any sum was due on the note of Hyman and wife to the mortgage company, it must be held that appellee has the superior title to the land by virtue of his purchase at trustee's sale, and that on this ground alone the court below could not legally have rendered any other judgment than that entered, on the case made by the pleadings.

If appellants had set up such equities as they may have had, what relief would have been given them it is neither necessary nor proper in this case to consider.

The judgment of the court below will be affirmed, but this will be done without prejudice to any right appellants may have in an adjustment of equities growing out of the entire transaction through which appellee holds title.

It is so ordered.

*Affirmed.*

Delivered June 10, 1892.