## Tompkins *v.* Merriman et al., Appellants.

*Will—Election—Estoppel.*

A person who accepts a benefit under a will is estopped from asserting a claim repugnant to its provisions.

*Evidence—Presumption—Title of land—Election.*

Where the quantity of a testator's interest in land is uncertain, the presumption is that he intended to vest in his devisee just such a title as he himself held, and parol evidence is not admissible to contradict this presumption.

In 1866, Harvey Tompkins conveyed to his father, William Tompkins, an island in a river. The consideration mentioned in the deed was sixty-nine hundred dollars, and the receipt of this sum was acknowledged in

the instrument.  In 1876, William Tompkins died, bequeathing to his son Harvey an annuity, and forgiving him all judgments and debts owing by him to the testator.  All the residue of testator's property was left to another son and a daughter, but the land was not particularly described. In 1886 judgment was entered against Harvey, and the island in question was bought at the sheriff's sale by plaintiff.  Plaintiff in an action of ejectment claimed that the deed of 1866 was in reality a mortgage, and this question was submitted to the jury.  Defendants claimed that as testator had forgiven Harvey's debts the doctrine of election applied.  *Held*, that the doctrine of election did not apply, and that a verdict and judgment for plaintiff should be sustained.

Argued April 13, 1893.  Appeal, No. 148, Jan T., 1893, by defendants, Friend F. Merriman et al., from judgment of C. P. Luzerne Co., March T., 1886, No. 102, on verdict for plaintiff, William S. Tompkins.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Ejectment for Scovill's island in the Susquehanna river.

The court charged in part as follows, by RICE, P. J.:

" Both parties claim under the same person, namely, James Harvey Tompkins ; he had the undisputed title to the island on July, 1865, when he obtained it by deed from A. J. Griffiths. This was in July, 1865; and while I shall endeavor not to embarrass you by referring to dates, yet it will be necessary to refer to some dates, and to ask you to try and keep them in mind. J. H. Tompkins, then, had the undisputed title to the island in July, 1865.   On Jan. 22, 1886, a judgment was entered against him on a note dated January 14, 1886, given by him to his brother, Alva Tompkins, which was assigned to W. S. Tompkins, this plaintiff.  An execution issued upon that judgment, and in February, 1886, this land was sold at sheriff's sale as the property of J. Harvey Tompkins.  Notice was given at the sale that it was not owned by J. Harvey Tompkins, but was owned by certain parties named therein — these defendants. Against this the defendants show that on Feb. 3, 1866, less than a year after Harvey Tompkins bought the island, he conveyed it by deed to his father, William Tompkins, and this deed was recorded Feb. 5, 1866.   William Tompkins went into possession of the island and occupied it until the time of his death, in August, 1876.   He occupied it either by himself or by his tenants.   He left a will, devising the residue of his real estate, in

cluding this island, to his son Alva, and his daughter, Mrs. Messenger. He made a bequest to his son Harvey of sixty dollars a year, and forgave him all the debts that his son owed him. The devisees under the will of William Tompkins remained in possession after his death and are still in possession. The first claim that was set up by the plaintiff or by Harvey Tompkins by any legal proceeding was in December, 1885, when it is said that Harvey Tompkins brought an action of ejectment; but that came to nothing, because in the meantime his interest and title, whatever it was, was sold, and in February, 1886, William Tompkins brought this action of ejectment on his sheriff's deed.

" On the face of the papers the legal title to the land is in the defendants. They hold it (1) as to one half, under the will of William Tompkins, and (2) as to the other half, under a deed from the First National Bank of Pittston, who had purchased it at sheriff's sale as the property of Alva Tompkins. The plaintiff, so far as the record shows, took nothing by the sheriff's sale, because J. H. Tompkins had no title to the land in January, 1886.

" In order to overcome this evidence, the plaintiff has undertaken to convince you that the deed from Harvey Tompkins to William Tompkins was in fact intended as a mere security for a debt and not as an absolute conveyance of the land, and if they have established that fact, then, although it was in form a deed absolute, it was in fact and effect a mortgage.

" To go back a little to a recital of some of the facts which it will be important for you to remember, I call your attention to the testimony of Gen. Osborne to the effect that in the early part of 1866, William Tompkins, who had been his client, and Harvey Tompkins, appeared at his office. Some conversation took place there in his presence, according to his testimony, and he swears that at that time he drew a note for four thousand dollars, which is the note which has been offered in evidence here.

" On Feb. 3, 1866, the deed was executed and acknowledged. On Feb. 5, 1866, the deed and the judgment note were entered of record by Gen. Osborne.

" [So far as the testimony shows, there is none that any money passed from William Tompkins to Harvey Tompkins, nor is

there any evidence that at any time Harvey Tompkins was indebted to his father, William Tompkins.] [6]

"There is evidence that Harvey Tompkins was indebted to creditors who were secured by judgment or mortgage liens, and that he was indebted to other creditors to some extent at least who were not so secured. It is in evidence that about this time also he conveyed certain other real estate to his brother Alva. It is also in evidence that some time during the same month— February—his personal property was sold at sheriff's sale. . . .

"[Your attention has been called to the fact that although Harvey Tompkins was not indebted to his father, and although it does not appear that any money passed between them, yet he not only gave this deed, but a month before had given him a judgment note for four thousand dollars which was entered up at the same time as the deed, and which, so far as appears, is still unsatisfied. That is a circumstance of significance, not conclusive in itself, but tending to show, in connection with the testimony of Mrs. Allan, if you believe it, that this was a mortgage, and not intended as an absolute conveyance.] [7]

"Do not misunderstand me—I say that is not conclusive, but it is a circumstance of significance to be considered by the jury in connection with her testimony, if you believe it. You will also remember the testimony of Gen. Osborne at the time of the execution of the note, and what he said with regard to that.

"We call your attention to the statement of Squire Bohan at the time the deed was acknowledged, and of Mr. Streng. These statements, if made, tend to show an admission on the part of William Tompkins of a trust of some nature, but do not show what its nature was. They would be insufficient of themselves to establish the allegation of the plaintiff; they are admitted simply as circumstances tending to corroborate the testimony of Mrs. Allan.

"On the other hand, it is argued with force that although the will of William Tompkins canceled Harvey Tompkins' debt in 1876, yet he made no assertion of his right to the island until December, 1885, a considerable period of time. This is a circumstance worthy of careful consideration by the jury along with all of the other testimony and circumstances in the case. The fact that William Tompkins went into possession is a cir-

cumstance by no means conclusive, however, because, as you have heard me say at the outset, even if this were a written mortgage, the possession of the land by the mortgagor—the person to whom the mortgage was given—would not be inconsistent therewith; indeed under the law he would have a strict right to the possession, unless an agreement was made to the contrary.

" [From all of these facts and circumstances to which we have called your attention, as well as from others which have been called to your attention by the counsel in their arguments, and which we have not specifically alluded to, but which are to be considered by you, you are to determine whether or not this deed from Harvey Tompkins to William Tompkins, in February, 1866, was, as it purports on its face to be, an absolute conveyance of his title to the land, or whether it was intended by them at the time as a mere security for money to be advanced by William Tompkins, and unless you find the fact to be as last stated, then your verdict must be for the defendants; but if you find the fact to be that it was agreed and intended to be not an absolute conveyance, but a mere security for debts and for money to be advanced by William Tompkins, and that the land should be reconveyed to Harvey when William should have reimbursed himself out of the rents, then it was a mortgage, and the rights of Harvey Tompkins having passed to the plaintiff, he would be entitled to recover the one undivided half part.] " [8]

Plaintiff's point was inter alia as follows :

" 5. If the jury find that the deed in question was. given to secure William Tompkins for moneys which he undertook to pay in discharge of the mortgage of A. J. Griffiths, and other indebtedness of J. H. Tompkins, and that William Tompkins was to reimburse himself out of the rents and profits of the island, then no matter whether he had been fully reimbursed at the time of his death or otherwise, the bequest in his will wherein he gives to J. H. Tompkins all debts, etc., satisfied this mortgage. *Answer:* This point is affirmed. We understand that the correctness of that is conceded all around ; that if this was a mere debt it was canceled by the will. It is therefore unnecessary to charge upon the sixth point, and the seventh point is withdrawn." [4]

Defendants' points were among others as follows :

" 2. Where an attempt is made, as in this case, to convert a deed absolute on its face into a mortgage, the judge sits as a chancellor and decides both law and facts ; the only province of the jury is to aid him by determining the credibility of the witnesses and the effect of conflicting testimony.    There being here no conflict of testimony, and the evidence on behalf of the plaintiff, if fully believed, being insufficient to show the deed from Harvey Tompkins to his father to be a mortgage, and no other sufficient ground of recovery being shown, the verdict should be for the defendants."    Refused. [5]

" 5. Twenty years elapsed from the date of Harvey Tompkins' deed to his father and the beginning of this suit, and ten years from the date of the father's death ; this delay is unexplained, and constitutes laches of so gross a nature as to bar the right, if any existed.    *Answer :*  This point is answered in the negative, subject to the decision of the court upon the question of law reserved, namely, whether the plaintiff's right of action is barred by the neglect to make demand until the bringing of this suit.    As we have already said, the delay is a fact to be considered by the jury in weighing the testimony of the witnesses bearing upon their recollection and credibility and the probability of the facts asserted by them." [2, 3]

9. Request for binding instructions.    Refused.    [1]

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were (1–8) instructions, quoting them.

*Samuel B. Price, George W. Beale, George S. Ferris* and *Frank C. Sturges* with him, for appellants, cited: Stump v. Findlay, 2 Rawle, 168 ; 2 Herman on Estoppel, §§ 619, 756 ; 1 Jarman on Wills, 449 ; Preston v. Jones, 9 Pa. 456 ; Stokes's Est., 61 Pa. 136 ; Cox v. Rogers, 77 Pa. 160 ; Lewis v. Lewis, 33 Pa. 66 ; Streatfield v. Streatfield, 1 L. Cas. Eq. 376 ; Eichelberger's Estate, 135 Pa. 170 ; Machemer's Estate, 140 Pa. 548 ; Zimmerman v. Lebo, 151 Pa. 345 ; Miller v. Springer, 70 Pa. 269 ; 11 A. & E. Ency. L. 377 ; Cummings's Ap., 153 Pa. 397 ; Todd v. Campbell, 32 Pa. 250 ; Le Gendre v. Byrnes, 14 Atl. R. 621 ; Saunders v. Gould, 134 Pa. 445 ; Pearson v. Sharp, 115 Pa. 254 ; Burger v. Dankel, 100 Pa. 113 ; Null v. Fries, 110 Pa. 528 ; Lance's Ap., 112 Pa. 456 ; De France v. De

France, 34 Pa. 385; 12 Am. & Eng. Ency. of Law, 609; Ash-hurst's Ap., 60 Pa. 290; Hughes v. Hughes, 54 Pa. 240; Neely's Ap., 85 Pa. 387; Briggs' Ap., 93 Pa. 485; Evans' Ap., 81 Pa. 278; Graham v. Donaldson, 5 Watts, 453; Peebles v. Reading, 8 S. & R. 494; Harrison v. Gibson, 23 Gratt. (Va.) 212; Pickering v. Pickering, 38 N. H. 400; Hall v. Clagett, 48 Md. 223; German Roman Catholic St. Vincent Orphans' Asylum's Ap., 115 Pa. 165; Winton v. Freeman, 102 Pa. 366; Gill v. Henry, 95 Pa. 388; Bredin's Ap., 92 Pa. 241; Zuver v. Clark, 104 Pa. 222; Murphy v. Hubert, 16 Pa. 50; Shank v. Simpson, 114 Pa. 208; Blystone v. Blystone, 51 Pa. 373; Hershey v. Weiting, 50 Pa. 240; Kunkle's Ap., 107 Pa. 368.

*Lyman H. Bennett, C. F. Bohan* and *John T. Lenahan* with him, for appellee, cited: Stump v. Findlay, 2 Rawle, 168; Preston v. Jones, 9 Pa. 456; Cox v. Rogers, 77 Pa. 160; Lewis v. Lewis, 33 Pa. 66; Eichelberger's Est., 135 Pa. 170; Machemer's Est., 140 Pa. 548; Zimmerman v. Lebo, 151 Pa. 345; Miller v. Springer, 70 Pa. 269; Wells v. Van Dyke, 109 Pa. 330; Stafford v. Wheeler, 93 Pa. 462; Rhines v. Baird, 41 Pa. 256; Hamet v. Dundas, 4 Pa. 178; Gaines v. Brockerhoff, 136 Pa. 196; Burger v. Dankel, 100 Pa. 113; Huoncker v. Merkey, 102 Pa. 465; Plumer v. Guthrie, 76 Pa. 457; Maffitt's Adm'r, v. Rynd, 69 Pa. 380; Danzeisen's Ap., 73 Pa. 65; Marks v. Pell, 1 Johns. Ch. 594; Yates v. Hambley, 2 Atk. 360; Fenwick v. Reed, 1 Mer. 114; Longuet v. Scawen, 1 Vesey, Sr., 402; Anding v. Davis, 38 Miss. 575–597; Miner v. Beekman, 50 N. Y. 337; 2 Jones on Mortgages, §§ 1144, 1152–3; 2 Story's Equity Jur. 1028 a; 4 Kent's Com., 186, 187; 2 L. Cas. Eq., star pp. 768, etc.; Brock v. Savage, 31 Pa. 421; Hughes v. Edwards, 9 Wheat. 489; Elmendorf v. Taylor, 10 Wheat. 152–169; Demarest v. Wynkoop, 3 Johns. Ch. 129; Slee v. Manhatten Co., 1 Paige, 48; Phillips v. Sinclair, 20 Me. 269; Cholmondeley v. Clinton, 2 Jac. & Wak. 191–2; Bonny v. Ridgard, cited 17 Ves., Jr. 98; Waldo v. Rice, 14 Wis. 286; Green v. Turner, 38 Iowa, 112; Hubbell v. Sibley, 50 N. Y. 468; Miner v. Beekman, 50 N. Y. 337; Hallesy v. Jackson, 66 Ills. 143.

Opinion by Mr. Justice Williams, May 22, 1893:
The doctrine that one who accepts a benefit under a will is

estopped from asserting a claim repugnant to its provisions is founded on equitable considerations, and has been recognized and applied in this state in many cases, beginning with Stump and Others v. Findlay and Others, 2 Rawle, 168 ; and extending to Zimmerman v. Lebo, 151 Pa. 345, and Cummings's Appeal, 153 Pa. 397. The appellant's counsel contends with great earnestness that this is a proper case for the application of that doctrine ; and, if he is right in this position, we quite agree with his conclusions that there should be no recovery in this action. But upon the face of the will alone, the facts that call for the application of the doctrine of equitable election do not appear. If the testator had devised the island by name or other mode of description, so that his intention to treat it as his own and dispose of it as a part of his testamentary scheme had appeared upon the face of the instrument, the appellant's position would have been an unanswerable one. The fact is, however, that no mention of the island as such is made in the will. If it passes to the residuary legatees, it is by virtue of general words referring to all his estate, real and personal, which he had not specifically appropriated to particular legatees. Such general words would pass the title to the island, if the testator held it, and it would pass just such a title as the testator actually held. Whether that title was a fee simple, or a naked legal title held as trustee, or pledgee, or mortgagee, is a question upon which the testator has not spoken. If involved in doubt it must be settled in a legal manner. When the extent of the title is settled the extent of the interest acquired by the residuary legatees is ascertained. Until such ascertainment the legal presumption must prevail ; and the law will presume that the testator intended to do what he had a right to do, and to vest in his legatee just such a title as he himself held : Miller v. Springer, 70 Pa. 269. Parol evidence is not admissible to contradict this presumption or to establish that the testator in fact intended to do that which he had no legal right to do. In this case we have no such evidence. The question depends on the face of the will, in which nothing appears to throw light upon the views entertained by the testator in respect to the extent of his title to the island. The legal presumption must therefore prevail. This leaves the question of the nature and extent of the title held by the testator to be determined by the

courts; and when that question is settled the residuary legatees will not be defeated or disappointed in the legal sense of that word, but they will receive just such a title to the island as the testator held, and as the law presumes he intended to transmit to them.

It is evident therefore that this case is not one in which the doctrine of equitable election can be successfully invoked. The question of fact on which this case turned was over the effect of the deed made by the plaintiff to his father in 1866. This question was carefully submitted to the jury by the learned judge of the court below upon evidence that, if credited by them, was sufficient to sustain their verdict.

We have examined the other errors assigned but find no sufficient reason for disturbing this verdict. The judgment is therefore affirmed.