PACKARD et al. v. DE MIRANDA et al.

(Court of Civil Appeals of Texas. San Antonio. March 13, 1912. On Motion for Rehearing, April 10, 1912.)

1. TRESPASS TO TRY TITLE (§ 35*)—ACTIONS —ADMISSION OF EVIDENCE.

Where, in trespass to try title for a tract claimed by plaintiff as heir of C. her father, defendants claimed that plaintiff was estopped from claiming title as heir because she had elected to take under a will of L., devising such tract to her, evidence was admissible, as against the plea of estoppel, to show that all the property devised to plaintiff in fact belonged to her father, and had been placed in A.'s name in trust for plaintiff's father to protect it from debts, so that L. had no title to the property devised to plaintiff; not requiring plaintiff to elect as to taking under the will; such evidence not being an attempt to raise a trust without pleading it.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

2. TRESPASS TO TRY TITLE (§ 35*)—PLEADING—PROOF.

Under the ordinary pleadings in trespass to try title, neither party can introduce evidence of an equitable right.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

3. WILLS (§ 781*)—ELECTION.

To require one taking under a will to elect whether she will take under the will or as heir, testatrix's intention to that effect must be clearly shown in the will, or arise from the most necessary implication.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2013–2017; Dec. Dig. § 781;* Executors and Administrators, Cent. Dig. § 696.]

4. WILLS (§ 781*) — ELECTION — TAKING AS HEIR.

A devisee under a will cannot be compelled to elect if the property devised to her would have belonged to her as heir independent of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2013–2017; Dec. Dig. § 781;* Executors and Administrators, Cent. Dig. § 696.]

5. WILLS (§ 781*)—ELECTION—NECESSITY.

Where plaintiff was the only person to whom specific property was devised, and the only other devise was in the residuary clause, which gave the balance "of any and all property that may be mine at the time of my death" to testatrix's grandson, plaintiff was not put to an election as to whether she should take under the will property devised to her, which

did not belong to testatrix, but belonged to plaintiff independent of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2013–2017; Dec. Dig. § 781;* Executors and Administrators, Cent. Dig. § 696.]

**6. WILLS (§ 792*)—ELECTION — FOUNDATION OF DOCTRINE.**

The doctrine of election in the law of wills is founded upon actual intention, and an election made by a devisee in ignorance of material facts is not binding upon him, especially where no one is injured thereby.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2061–2063; Dec. Dig. § 792;* Executors and Administrators, Cent. Dig. § 696.]

**7. WILLS (§ 717*)—ELECTIONS.**

One who accepts a devise under a will must adopt the whole instrument, so far as he is interested therein.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1711–1716; Dec. Dig. § 717.*]

**8. WILLS (§ 487*) — CONSTRUCTION — INTENTION OF TESTATOR.**

While testator's intention must be obtained from the language of the will, proof of the peculiar circumstances surrounding the testator, the condition of his affairs, his attitude toward his natural beneficiaries, etc., is permissible to discover such intent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

**9. WILLS (§ 487*)—PAROL EVIDENCE.**

Parol evidence is not admissible to contradict, add to, or explain a will by proving testatrix's declarations before, at, or after the execution of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

**10. APPEAL AND ERROR (§ 204*) — PRESENTATION BELOW—OBJECTIONS TO EVIDENCE.**

Where in trespass to try title in which plaintiff claimed as heir, and defendant claimed that plaintiff was estopped to claim title because she had elected to take the same land under a will, defendant cannot first object on appeal to evidence that the land devised to plaintiff in fact belonged to her independent of the will as being held in trust for her father.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1258–1280; Dec. Dig. § 204.*]

On Motion for Rehearing.

**11. APPEAL AND ERROR (§ 882*)—ESTOPPEL TO ALLEGE ERROR.**

Appellants cannot complain on appeal of the admission of evidence which they themselves caused to be admitted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

Appeal from District Court, Maverick County; R. H. Burney, Judge.

Action by Celia Carter de Miranda and another against W. L. Packard and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

F. Vandervoort, of Carrizo Springs, and J. R. Sanford, of Eagle Pass, for appellants. Murray & Murray, of Eagle Pass, for appellees.

FLY, J. This is an action of trespass to try title to an individual interest in three tracts of land containing in the aggregate 1,440 acres, instituted by Celia Carter de Miranda and her husband, Manuel M. Miranda, against W. L. Packard, Joseph A. Pompeney, F. B. Wheeler, and John L. Kirkpatrick. The cause was tried without a jury, and judgment was rendered in favor of appellees for the land for which they sued. This is a second appeal; the case on first appeal being reported in 123 S. W. 710, where the case is fully stated.

It appears from the allegations in appellees' petition that the land in controversy consists of a one-sixth interest in 160 acres of land conveyed by the state of Texas to Jesus Ma. Gonzales in 1877, and of two tracts of 640 acres of land each patented to Annetta Carter on February 3, 1882, making an aggregate of 1,440 acres, and it was agreed by the parties that Annetta Carter at the time of her death "was the owner in fee simple of the fourteen hundred and forty (1,440) acres of land, of which the plaintiffs are seeking to recover an undivided one-sixth interest in this suit." She died in February, 1899, intestate, and no administration was had on her estate. She left five heirs, her mother, Louisa Solis, and the children of two brothers of the whole blood, Charles and George Carter, both dead, and the children of two sisters of the half blood, Felipe Solis de Gedella and Mariqueta Solis de Gedella. The appellee Celia Carter de Miranda was the only child and sole heir of Charles Carter. Louisa Solis, the mother of Annetta Carter, died in August, 1899. The property of which Annetta Carter, who had no children, upon her death descended one-half to her mother, Louisa Solis, one-sixth to the child or children of each of her two brothers, being full brothers, and one-twelfth to the children of each of her two sisters, being half sisters. Charles Carter, father of Celia Carter, died in February, 1899, immediately before the death of Annetta Carter, and George Carter died in February, 1899, immediately after her death. Celia Carter was born on May 23, 1884, and was married to Manuel M. Miranda on September 14, 1906, when she was in her twenty-third year. On March 9, 1899, about two weeks after the death of Annetta Carter, Louisa Solis made her last will, in which she bequeathed to Celia Carter a brick house and lot in the town of Eagle Pass, "said property being situated west and adjoining the property I this day conveyed by deed to Fernando Gedella. Also an undivided one-half interest to the property bought by Bentura Solis and Charles Carter, being an undivided one-half of the one-third of a league patented to John Potter, known as survey No. 65, Abstract No. 111, and being the property now occupied by Alejandro Gedella. Also the section of land known as survey No. 7 granted to Annetta Carter, assignee of G., C. & S. F. Ry. Co., containing 640 acres of land situated on Terreritos Creek in Maverick County, Tex-

as; also 160 acres of land, known as survey 104, the John Van pre-emption." The balance of any and all that might be hers at the time of her death she bequeathed to her grandson, Fernando Gedella, and he was appointed what was denominated "administrator of my estate, without bond being required of him." At or about the same time Louisa Solis executed two deeds, one to Fernando Gedella, which is referred to in the will, and the other to Fernando Gedella, Manuelito Gedella, Alejos Gedella, Louisa Gedella, Rita Gedella, and Francisco Gedella. In the first-mentioned deed she conveyed to Fernando Gedella a certain lot and improvements in Eagle Pass, and in the other she conveyed to the parties named one-half of one-third of a league of land known as survey 65, patented to John Potter, the abstract number being 111, and further described as "being the same land conveyed by John James by deed to Bentura Solis and Charles Carter, dated September 15, 1871, * * * the interest to the above land belonging to Charles Carter was conveyed by deed to Annetta Carter dated March 11th, 1878." In the deed to Fernando Gedella, which is referred to in the will, is the following recital: "The said Annetta Carter, referred to above, was my daughter and never married, and died on the 22nd day of February, 1899, without issue, leaving me, Louisa Solis, her only heir." In the other deed, of the same date, it is recited: "I, Louisa Carter Solis, being the widow of said Bentura Solis, deceased, and the legal heir of my daughter, Annetta Carter, deceased," etc. In the inventory of the estate all of the land owned by Annetta Carter at the time of her death, among the same being the land in controversy, was included, and described as the separate estate of Louisa Solis. On September 20, 1905, after Celia Carter was 20 years of age, she sold and conveyed to Joseph Wipff the 160 and 640 acres of land bequeathed to her by Louisa Carter Solis, and in the deed it is recited: "The aforesaid property was bequeathed to grantor by Louisa Solis, deceased, in her last will and testament which is of record in Volume No. 3, page 122 of the probate records of Maverick county." In October, 1899, Fernando Gedella conveyed to Celia Carter, in pursuance of an agreement, the north half of survey 65, which was bequeathed to her by Louisa Solis, and on December 15, 1906, Celia Carter de Miranda, joined by her husband, Manuel M. Miranda, sold and conveyed to Joseph and John Schmerber the said land, thus disposing of the last of the 1,538 acres of land bequeathed to her by her grandmother.

[1] Appellee Celia Carter in her pleadings claimed the interest in the 1,440 acres of land as an heir of Annetta Carter, but on the trial without any pleadings to support it was permitted to introduce evidence tending to prove that the whole of the property bequeathed to Celia Carter belonged to Charles Carter, and had been placed in the name of Annetta Carter in order to protect it from debts, and upon that evidence the court based a finding that the property bequeathed by Louisa Solis to Celia Carter was in fact and truth the property of Charles Carter, and that Annetta Carter held it in trust for him, and that the testatrix, Louisa Solis, had no title, interest, or estate in the property, although she believed that she owned everything held and claimed by Annetta Carter.

[2] It is the well-established rule in Texas that, when the relief sought in a suit for land is an equitable one, it will not be given under an ordinary petition in trespass to try title, or a plea of not guilty under the ordinary pleadings in cases of trespass to try title. Neither party can obtain equitable relief, but, in order to admit evidence upon which to found a right to equitable relief, the facts justifying such evidence should be pleaded. Without such equities being pleaded, whoever shows a superior legal title to the land must recover, notwithstanding such facts may have existed which if properly pleaded and proved, would have entitled the opposing party to affirmative relief. Groesbeeck v. Crow, 85 Tex. 200, 20 S. W. 49; Matthews v. Moses, 21 Tex. Civ. App. 494, 52 S. W. 113; Smith v. Olivarri (Tex. Civ. App.) 127 S. W. 235; Roth v. Schroeter (Tex. Civ. App.) 129 S. W. 203; Wilkin v. Owens, 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867. The foregoing rule is invoked in this case against the testimony of W. A. Bonnet, the scrivener, who drew the will, and two contemporaneous deeds, and who was introduced by appellants to show the facts surrounding the execution of the will and deeds. On cross-examination, without objection on the part of appellants, the witness testified that the testatrix told him that the land which she bequeathed to Celia Carter was the property of her father, Charles Carter, and that the title had been placed in his sister, Annetta Carter, in order to give excuse for his refusal to go security for any one. It is the contention that the evidence should not have been considered by the trial judge, as it was, because it was an attempt to ingraft a trust on the title to the land when no such equities were pleaded. The answer to the contention is that the rule cannot be invoked in this case because there was no attempt to prove up any equities as to the title to the 1,440 acres, an interest in which is sued for, but that the testimony was introduced in answer to a plea of appellants that Celia Carter de Miranda was estopped from claiming title to her interest in the 1,440 acres of land, because she had elected to take under the will. To prove the estoppel they invoke the aid of the recitals in the will and the two contemporaneous deeds, and claim that they gave actual notice to Celia Carter that

her grandmother had claimed all the property as her own, as the sole heir of Annetta Carter, and that she had been bequeathed a large portion of the property and had accepted and disposed of it. In answer to that, she proved that Louisa Solis, at the very time the will was being executed, said she was giving to Celia Carter only the property which belonged to her father, and which she was entitled to have. The effect of the testimony, in other words, was to show that nothing was bequeathed to Celia Carter except property that was hers without a bequest. No attempt was made to ingraft a trust, or to raise any equity, in connection with the land sued for, but the evidence was in answer to matters pleaded by appellants, as to a matter merely incidental to the main question, but which had a tremendous effect upon it.

[3] If, as stated by Louisa Solis, the testatrix, the lands bequeathed to Celia Carter were the property of her father, the testatrix had no right, power, or authority to dispose of them, and, in order to fasten upon Celia Carter the onus of an election, the intention of the testatrix should have been either distinctly and clearly expressed in the will, or should arise from the strongest and most necessary implication. No matter what the testatrix may have conceived as her rights in the property of Annetta Carter, she recognized the fact that the property bequeathed to Celia Carter in the will was hers through inheritance from her father, and the evident intention of executing the will and deeds was to give to her grandchildren what she believed to be their father's.

[4] If Celia Carter only got her own property through the will, which was hers independent of any will, she cannot be held to an election, because, in order to deprive her of her rights in the property, it must be clear that her claim to the interest in the land belonging to Annetta Carter was irreconcilable and inconsistent with the will.

[5] It may be that Celia Carter would have been put to an election if the will had described other property given by the testatrix to other parties, and especially if the 1,440 acres in controversy had been bequeathed to any person, but Celia Carter is the only one to whom certain specific property was bequeathed, followed by the residuary clause: "Furthermore I will and bequeath the balance of any and all property that may be mine at the time of my death to my grandson, Fernando Gedella." This was not sufficient to put Celia Carter upon an election, and to estop her from claiming an interest in property which did not belong to the testatrix. The case of Tomkins v. Merriman, 155 Pa. 440, 26 Atl. 659, was one in which a will somewhat similar to this in its provisions was under consideration. It seems that there was a residuary clause which left all the re-

maining property of the testator, without describing it, to certain parties, and the question of election arose as to a certain island which was claimed under the residuary clause. The court said: "If the will had devised the island by name, or other mode of description, so that his intention to treat it as his own, and dispose of it as a part of his testamentary scheme, had appeared upon the face of the instrument, the appellant's position would have been an unanswerable one. The fact is, however, that no mention of the island, as such, is made in the will. If it passes to the residuary legatees, it is by virtue of general words referring to all his estate, real and personal, which he had not appropriated to particular legatees. Such general words would pass the title to the land, if the testator held it; and it would pass just such a title as the testator actually held. Whether that title was a fee simple, or a naked legal title held as trustee or pledgee or mortgagee, is a question upon which the testator has not spoken. If involved in doubt, it must be settled in a legal manner. When the extent of the title is settled, the extent of the interest acquired by the residuary legatees is ascertained. Until such ascertainment, the legal presumption must prevail; and the law will presume that the testator intended to do what he had a right to do, and to vest in his legatee just such a title as he himself held." That court further laid down a rule, deemed a wise one by the writer hereof, that "parol evidence is not admissible to contradict this presumption, or to establish that the testator in fact intended to do that which he had no right to do." That rule would not prevent the introduction of parol testimony to indicate the intention of the testator under certain circumstances, but would prevent parol testimony that would place the testator in a position of claiming something which he should have known was not his, and thereby placing his memory in an unfavorable light. But, if it be proper to permit testimony to show that the testatrix was claiming property to which she had neither legal nor equitable title, still in this case the parol evidence shows that Louisa Solis did not claim any interest in the land she bequeathed to appellee, Celia Carter de Miranda, but expressly stated that it was the property of Charles Carter, and as such belonged to Celia. The legal title being in Annetta Carter, the method of the testatrix of divesting it out of the other heirs of Annetta Carter was to bequeath it to Celia. While the witness Bonnet stated that Louisa Solis was claiming all the property, he further said: "She attempted to give to Charles Carter's daughter all that Charles once owned. She attempted to give to Fernando all that Annetta had owned, who had raised Fernando, and the remaining to Alejandro Gedella's other children, who were her grandchildren." When

the witness was asked if the land bequeathed to Celia was the identical property once owned by Charles Carter, he answered: "That was my understanding of it; that Celia Carter was getting exactly what had belonged to her father, and was held in trust by Annetta." Under that evidence, as well as under the terms of the will, Celia Carter was not put upon her election. The parol testimony clearly indicated that Louisa Solis did not claim all the property of Annetta Carter as her own, for she recognized the fact that Annetta had indicated to whom certain property belonged and carried out her wishes in regard thereto through the medium of the two deeds and the will. She claimed to own it merely as the distributer of it in the manner the rights and equities of the parties demanded, and there is nothing in the written or parol testimony that tended to show that she was endeavoring to force an election on any one.

[6] The doctrine of election is founded upon principles of equity and justice, and upon actual intention, and an election made in ignorance of material facts is not binding, and especially, as in this case, where no other person's rights have been affected thereby. "So if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed." Watson v. Watson, 128 Mass. 152. In this case no one has lost, or will lose, anything legally belonging to him or her by Celia Carter accepting the provisions of the will, if it can be held an acceptance for a girl, who was 15 or 16 years, of age when the will was executed, to make deeds to the lands bequeathed her, when she reached her majority, although she was ignorant of the language in which the will and deeds were written, and ignorant of the facts and circumstances surrounding the property and its disposal. To hold her in her ignorance and innocence bound as to an election would be to make a laughing stock of equity and a burlesque of justice. She could not have made an intelligent choice, if the will had demanded of her an election, because of her ignorance of the facts in connection with the property, and she cannot be held estopped to claim her own when no one is hurt by her acceptance under the will, and especially when it gave her nothing but what was hers by right of inheritance from her father. She obtained no benefit whatever under the will, and there was nothing offered for her to choose from. "Every bequest imports a bounty, and is not, unconnected with other circumstances, to be taken as a satisfaction of a pre-existing incumbrance." Carroll v. Carroll, 20 Tex. 731. In that case it was held that the surviving wife had not made an election, although she had returned an inventory in which the property was scheduled as the separate estate of her deceased husband.

[7] In accepting a bequest of property which was her own, independent of the will, Celia Carter did nothing that was inconsistent with the balance of the will. The principle of election is that the person who accepts under it must adopt the whole of the instrument, so far as he is interested therein, and, as before stated, there was nothing done inconsistent with the terms of the will by Celia Carter, in accepting thereunder and afterwards claiming her other property, which it is not apparent from the will was intended to be bequeathed. Philleo v. Holliday, 24 Tex. 38; Little v. Birdwell, 27 Tex. 691; Mayo v. Tudor, 74 Tex. 471, 12 S. W. 117. There must be compensation in the will for the property sought to be taken away. Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Pryor v. Pendleton, 92 Tex. 384, 47 S. W. 706, 49 S. W. 212; McClary v. Duckworth (Tex. Civ. App.) 57 S. W. 317. The theory advanced as to the land having been bought and paid for by Bentura Solis, Charles Carter, and Annetta Carter, and all placed in the name of the latter is plausible, if it were supported by the facts. There is no testimony to sustain it.

[8] In conclusion it is appropriate to say that the intention of the testator must be obtained from the language of the will and from that alone, but the law admits proof of the facts and peculiar circumstances relating to and surrounding the testator, his attitude towards his family and the state of his affairs, in order to discover the intent and reasonably interpret the words in the will as used by the testator, so as to make application of the facts of the case.

[9] It is equally well settled that parol evidence cannot be used to contradict, add to, or explain the contents of the will by proving the declarations of the testator before, at the time, or after the execution of the will. Hunt v. White, 24 Tex. 643; Peet v. Railway, 70 Tex. 522, 8 S. W. 203; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145. The testimony as to the declarations of Louisa Solis did not tend to vary or contradict the will, nor to affect the bequest therein, but merely elucidated her motive in giving Celia Carter the amount of property that she did. It was not intended to affect the will in any way, but was for the sole purpose of answering the plea of estoppel set up by appellants. Appellants did not object to the evidence on any ground at the trial of the case, and it is only after the case has reached this court that the objection is made that appellees should not be permitted to engraft a trust on certain property because the equity had not been pleaded.

[10] No other objection is urged to the testimony even in this court, and that ob-

jection cannot be entertained unless it be done to prevent an obvious violation of the principles of law and justice. Thurmond v. Brownson, 69 Tex. 597, 6 S. W. 778. The only objections that could be urged with force against the testimony are not mentioned.

The judgment is affirmed.

### On Motion for Rehearing.

The appellants herein perfected the former appeal to this court, and sought and obtained a reversal of the judgment on the ground that Bonnet was not permitted to testify to all the conversation with the testatrix at the time he prepared the will and deeds. 123 S. W. 710. The evidence was held to be admissible in order to ascertain the intention of the testatrix in regard to the property. Now, when the evidence tends to show a different intention from the one contended for by appellants, they contend that appellees should not be allowed the benefit of the evidence because they had not set up a trust in the land. The evidence was intended to meet the plea of estoppel filed by appellants, and was proper under the allegations of appellees in their supplemental petition. Barclay v. Stuart, 4 Tex. Civ. App. 685, 23 S. W. 799. If the evidence was admissible when it assisted appellants, it was admissible when it aided appellees.

[11] The evidence of Bonnet was not objected to in the lower court, but, on the other hand, appellants had compelled its admission. They cannot be heard now to complain because it was fatal to them.

The motion for rehearing is overruled.