## Andreas Estate

*Robert Ungerleider* and *Morris L. Schafer*, for accountants.

*William S. Hudders* and *John H. McKeever*, for guardian.

GEARHART, P. J., February 9, 1956.—Nellie Nicholas Andreas died December 12, 1954, leaving a last will dated June 29, 1950, which was duly probated. Letters testamentary were granted to Mark C. Nicholas and Harold C. Nicholas, and their account is before us for audit.

Two questions have been presented to the court for disposition. One is with respect to the provisions of the second item of the will, wherein the testatrix stated: "A fund of Two Thousand Dollars shall be set aside for maintenance of cemetery plots and flowers in the Western Salisbury and Indianland (Fairview) plot where my mother is buried. All markers, etc., shall be kept in good condition on both plots."

Counsel for the accountants has informed the court that each of the cemeteries maintains perpetual trust funds, the income of which is applied to the upkeep of graves as indicated by various testators. It has been suggested that each of the cemeteries should receive $1,000 under this bequest. This seems the reasonable and equitable thing to do under the circumstances, and accordingly, each of the two cemeteries will receive $1,000 for the maintenance of the burial plots and the placing of flowers thereon.

We have been asked to decide what each of the three named legatees under item 3 of the will is to receive. The third item of testatrix's will provides: "I bequeath unto my beloved niece, Mary Louise Nicholas, Two Thousand Dollars, being she is physically handicapped, and all my jewelry. To my two nephews, namely Robert J. Nicholas and Richard Earl Nicholas, one One Thousand Dollars. All government bonds are to be divided equally among the three above-named children of my brother, Mark C. Nicholas, which are made out for Robert J. Nicholas or Richard E. Nicholas."

The question is submitted because the testatrix has indicated that the Government bonds are to be divided equally among the three named children of her brother, Mark C. Nicholas. The facts are that during her lifetime testatrix purchased a number of United States Savings Bonds, series E, in the name of herself, payable on death to the two named nephews. Thus, she had bonds in the principal sum of $188 payable on death to her nephew, Richard E. Nicholas, and bonds in the sum of $4,378.86 payable on death to her nephew, Robert J. Nicholas.

The intent of the testatrix is clear. She wanted the bonds divided equally among the three named beneficiaries. However, when she purchased the bonds she designated that upon her death the bonds should be paid to named beneficiaries. Under federal regulations, title to the bonds passed to the named beneficiary upon the death of decedent: Prifer's Estate, 53 D. & C. 103; Evans' Estate, 57 D. & C. 55, 58, 61, 65; Thomas v. McGroarty, Admx., 69 D. & C. 108.

Thus, the bonds are presently vested in the two nephews, Robert J. Nicholas and Richard Earl Nicholas. The facts presented require that the equitable doctrine of election should operate. Mr. Bispham in his Principles of Equity, sec. 295, p. 497, tenth edition, defines this doctrine thus: It is ". . . a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attempted to be disposed of, in favor of a third party, by virtue of the same paper." This principle of election was cited with approval in Vassilakis v. Vassilakis, 371 Pa. 268, 273.

In Sharar's Estate, 136 Pa. Superior Ct. 478, 484, the equitable principle of election was applied, the court stating, page 484: "If appellant insists on retaining the proceeds of the policy she should be re-

quired to make compensation to appellee from the assets of the estate, and she can receive no benefit under the will until appellee has realized an amount equal to the proceeds of the policy from the assets of testator's estate."

In Tompkins v. Merriman et al., 155 Pa. 440, 446, it is stated: "The doctrine that one who accepts a benefit under a will is estopped from asserting a claim repugnant to its provisions is founded on equitable considerations, and has been recognized and applied in this State in many cases, beginning with Stump and Others v. Findlay and Others, 2 Rawle, 168; and extending to Zimmerman v. Lebo, 151 Pa. 345, and Cumming's Appeal, 153 Pa. 397." See also Forsythe's Estate, 81 Pa. Superior Ct. 347, 349; Cox et al. v. Rogers, 77 Pa. 160; Cooley v. Houston, 229 Pa. 495; Hickman's Estate, 308 Pa. 230, 235.

Based on the above recognized principles of law with respect to election, the two nephews, if they elect to keep the bonds, must give up their right to take the $1,000 bequeathed to them under paragraph 3 of the will. In the case of Richard Earl Nicholas, it is to his advantage to surrender his bonds of $188 so that he may receive the $1,000 legacy. On the other hand, it appears that it would be to the benefit of Robert J. Nicholas, a minor, to retain the bonds of $4,378.86 and forego his claim to the $1,000 legacy.

The two nephews are minors and, consequently, that procedure should be followed which is best for the respective minors. Robert will retain the $4,378.86 in bonds and Richard will surrender his bonds of $188. Thus, there is $1,188 additional to dispose of. This presents no problem. The intent of the testatrix is clear. She intended that all three children should be treated equally. Under the circumstances this cannot be done. However, the next best thing that can be done is to divide the $1,188 between the niece, Mary

Louise Nicholas, and the nephew, Richard Earl Nicholas. . . . This will be done: See Disston's Estate, 257 Pa. 537, 545.