SARAH C. MAULDING ET AL. v. WILLIAM COFFIN ET AL.

No. 210.

1. **Actual Notice—Registration.**—When appellant has assumed the payment of a promissory note, secured by a trust deed, and has actual notice of the mortgage or trust deed held on the property, the question of whether the registration thereof was regular, so as to be constructive notice to her, is immaterial.

2. **Equity of Redemption.**—The property owned by appellant was encumbered by a mortgage with power of sale, at time of purchase, and the land was sold under the mortgage. The appellant claims the right to redeem, even though the sale was regular and she had knowledge of the trust deed when she purchased. *Held*, the equity of redemption does not apply to sales under a mortgage with power of sale, when the purchaser's title is subject to the terms of the contract made by his vendors, and if the contract provides that the equity of redemption may be extinguished by the exercise of a power of sale. the purchaser's title does not exist after such a sale properly made. The right of the mortgagee to become the purchaser is not now an open question in this State.

APPEAL from El Paso. Tried below before Hon. T. A. FALVEY.

*Davis, Beall & Kemp*, for appellants.—1. Appellant had neither actual nor constructive notice of the mortgage under which the land was sold.

2. Appellant had the equity of redemption. Fordtran v. Brown, 80 Texas, 278; Taylor v. Harrison, 47 Texas, 454; Huff v. Webb, 64 Texas, 285; McLauth v. Hunt, 51 Texas, 115; Davis v. Agnew, 67 Texas, 209; Blackwell v. Barnett, 52 Texas, 333; Morrison v. Bean, 15 Texas, 269; 8 Am. and Eng. Encycl. of Law, 277; 2 Jones on Mort., sec. 1773; Railway v. Whitaker, 68 Texas, 634.

*Millard Patterson*, for appellees.—Appellant had no equity of redemption. Sprague v. Ireland, 36 Texas, 655; Fievel v. Zuber, 67 Texas, 275; Bohn Bros. v. Davis, 75 Texas, 25; Miller v. Koertgu, 70 Texas, 167; Blum v. Rogers, 71 Texas, 677; Weaver v. Nugent, 72 Texas, 277.

JAMES, CHIEF JUSTICE.—*Conclusions of Fact.*—1. In September, 1889, S. M. Rugg and wife conveyed to Mrs. Maulding certain real property in El Paso. The deed recited the consideration to be $11,000, paid $7000 in cash, and that she " shall assume and pay off a balance of $2000 due on a certain promissory note made by C. Q. Stanton to W. Coffin for $3000, which note is fully described in a deed of trust made by said C. Q. Stanton to C. O. Coffin, trustee, dated April 16, 1887, and recorded in book 4, page 124, record of deeds of trust in El Paso County, Texas," and also a balance of $2000 due on five notes made by said Stanton to S. G. Cowdry, which notes are fully described in a deed of trust dated February 1, 1887, and recorded in El Paso County, Texas.

2. The deed of trust from Stanton to C. O. Coffin, trustee, dated April

16, 1887, above mentioned, had already, on April 18, 1888, been released by a release duly recorded on same day. On April 18, 1888, the date of such release, S. M. Rugg executed to William Coffin his note for $2000, due twelve months thereafter, with 12 per cent interest per annum from date until paid, with 10 per cent on amount unpaid if placed in the hands of an attorney for collection, and secured the same by a deed of trust on the property in question, dated at same time, to C. Q. Stanton as trustee. This deed of trust was properly acknowledged for record, and was thereupon filed for record, but in the record the acknowledgment was not correctly copied, but read thus:

"*The State of Texas, County of El Paso.*—Before M. W. Stanton, a notary public in and for El Paso County, Texas, on this day personally appeared S. M. Rugg, known to me to be the person whose name is signed to the foregoing instrument, and acknowledged to me that —— executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, 18th day of April, A. D. 1888.

"M. W. STANTON,
"Notary Public for El Paso County, Texas."

Under this deed of trust the property was sold in 1891 by a regular trustee's sale, and it was bought in by William Coffin.

The plaintiff testified, in substance, that she knew little of the transactions, they being attended to for her by her agent, Loving; that the consideration as stated in Rugg's deed to her was as she understood it; that she never knew or heard of the deed of trust under which the property was sold, or of the note it secured, until long after her purchase from Rugg, and about April 1, 1891, when Coffin spoke to her about it; and that she paid Coffin interest up to that date and supposed she was paying on the Stanton note that she had assumed, and asked him for delay, believing that it was the Stanton note to Coffin that she owed; that she was willing to pay what she had really assumed; that at the time of the trustee's sale her property had been involved in litigation, and she was then unable to raise money on it; that the litigation had since resulted in her favor, and she was able to do so.

George B. Loving testified, that he did not know of the note or deed of trust under which the property was afterwards sold to Coffin, nor did Mrs. Maulding, until long after the deed from Rugg to her; that the consideration was just as it was expressed in the deed, and that she assumed to pay $2000 of the $3000 note made by C. Q. Stanton to W. Coffin and secured by a deed of trust on the property in controversy; and also another $2000 of Cowdry notes.

The interest of Mrs. Maulding in property at the time of the trustee's sale was worth from $5000 to $6000, and was bid in by William Coffin

for $2500, and attorneys for Mrs. Maulding while the sale was progressing gave notice that Mrs. Maulding claimed that the deed of trust was invalid as to her, and that the purchaser would buy a law suit, and we conclude that this affected the proceeds of the sale.

At the time of the transaction a memorandum was drawn up and signed by Mrs. Maulding and by Rugg, purporting to be a correct statement of settlement between them. This shows an item: "Amount of note due by Rugg to Coffin assumed by Mrs. Maulding, $2000; interest on same from April 17, 1889, to September 1, 1889, at 12 per cent per annum, four months and four days, $89.33." It also mentioned the other $2000 assumed by her, thus: "Two-thirds being Rugg's share of amount due A. G. Cowdry, assumed by Mrs. Maulding on note due February 1, 1889, $2000."

It was testified to by Rugg that Loving explained to her in his presence that there was a deed of trust to secure Coffin, and that he (Loving) put it down in writing and gave it to her; that he, Rugg, had given a new note and deed of trust to Coffin in place of the former note and deed of trust from Stanton to Coffin, as he had assumed it.

William Coffin testified, that Mrs. Maulding, after being notified by him, paid him the interest on the note up to July 18, 1890, at which time she told him that it was very hard for her to get money, and she then said that she would try to raise the money, and that if she did not raise it by the next spring he would be at perfect liberty to go on and foreclose the deed of trust; that he did not take steps to have the property sold until in May, 1891.

There is no testimony showing that Coffin or the trustee in any manner were responsible for the litigation or other difficulty Mrs. Maulding experienced in raising money with the property, nor that either of them committed any act of fraud in respect to her right in the property.

It appears that the note from Rugg to Coffin read with attorney fees, while the previous note from Stanton to Coffin did not contain such clause.

*Conclusions of Law.*—The District Court arrived at the following conclusions of fact: " I find as matter of fact from the evidence: 1. That as a part of the consideration of her purchase of the property in controversy (with other property), the plaintiff, Mrs. Maulding, assumed the payment of the note secured by the above deed of trust (the one from Stanton to Coffin), the recording of which I have held defective. 2. That when the plaintiff, Mrs. Maulding, purchased the property in controversy from Rugg, she had actual notice of the existence of the said deed of trust under which the property was sold."

The correctness of the finding stated in the last clause is questioned by the appellants. It is our opinion that the evidence tending to the conclusion arrived at by the judge is not insufficient to support it.

The court evidently gave weight to the fact, that in the contemporaneous memorandum signed by Mrs. Maulding and Rugg it was expressed that she assumed a debt of $2000 and interest due from Rugg to Coffin; to the testimony showing that this indebtedness assumed by her was fully explained to her by her agent, Loving; to the testimony of herself and others that she knew the debt she was assuming was secured by a deed of trust on the property in controversy; and to the testimony which showed that her conduct afterwards indicated that the deed of trust under which the sale was finally made was the one she had in contemplation when she purchased.

It appears to us that the finding of the judge on this issue was the only one that could fairly and reasonably have been arrived at, under all the facts and circumstances.

If the deed of trust from Stanton to Coffin and the one from Rugg to Coffin had represented separate and distinct debts, and both had been in force, we would hesitate in sustaining this finding of the court. But they were for substantially the same debt; the former one had been released and become replaced by the latter one, and the latter was the only debt in existence at the time which at all answered for the debt she assumed. What she clearly understood, viz., that her vendor was indebted to Coffin in the sum of $2000 on a note, with some accrued interest, and that this was secured by a deed of trust on the property she was purchasing (that in controversy), was unquestionably sufficient to affect her with notice of the rights of Coffin in reference to a debt and deed of trust which in its substantial features conformed with what she understood, and was the only one of the kind in existence. The position that this debt was mentioned in the deed to her as existing in connection with the deed of trust from Stanton to Coffin, and that this fact should exclude the finding that she had knowledge of the deed of trust by which Coffin's debt was in fact at that time secured, is not a substantial or reasonable one. There can be no doubt that she knew of the debt to Coffin, and that it was secured by a deed of trust on the property, and these were sufficient facts to put her on notice or inquiry concerning the precise condition of the Coffin claim. Besides, when Coffin notified her that the debt was due, and when she says she first knew that the note and deed of trust was different from what it was stated to be in her deed, she treated it as the one she had assumed. This conduct is of some force as a circumstance bearing on her knowledge at the time of the transaction. Entertaining this view of actual notice to plaintiff of the existence of the Coffin note and deed of trust at the time she acquired the property from Rugg, the question of due registration of the instrument is immaterial, and hence upon that question we need express no opinion.

It is necessary though to dispose of some other questions raised by appellant. It is insisted that Mrs. Maulding had the right to redeem, not-

withstanding the trustee sale was regularly made, and notwithstanding she may have had knowledge of the deed of trust when she purchased.

The theory seems to be predicated upon the principle, now firmly settled in this State, that if a sale had been had under judicial foreclosure, her right to redeem would have continued after the sale, unless she had been made a party to the foreclosure proceedings. Pierce v. Moreman, 84 Texas, 596; Railway v. Whitaker, 68 Texas, 634.

This principle has no application to the case of a purchaser from a mortgagor, the mortgage containing a power of sale of which the purchaser has notice. The purchaser's title is subject to the terms of the contract made by his vendor, and if the contract provides that the equity of redemption may be extinguished by the exercise of a power of sale embodied therein, the purchaser's title does not exist after such a sale properly made, and the right of the mortgagee to become the purchaser is not an open question in this State. Groesbeck v. Crow, 85 Texas, 200; Fievel v. Zuber, 67 Texas, 275; Marsh v. Hubbard, 50 Texas, 208, and cases cited.

There can be no doubt of the right of Mrs. Maulding to have set aside the deed made by the trustee in this case for fraud, and thus restore herself to a position to redeem. 'But there is no evidence that would support such relief in this case. The sale, so far as the trustee and Coffin were concerned, seems to have been regularly and fairly made, and neither, it seems, was charged by the evidence with any act contributing to the unfortunate circumstances that surrounded plaintiff about the time of the sale, and which disabled her from obtaining money with which to discharge the debt. The facts in this record would not have been sufficient ground for an injunction to restrain the sale, and they are not sufficient now to annul it. The suit was to have the sale vacated and set aside and the instruments relating to it cancelled, or else that Mrs. Maulding be allowed to exercise her equity of redemption by paying what she justly owes defendant Coffin.

The judgment will be affirmed.

*Affirmed.*