TOLLESON et al. v. NOBLES et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 21, 1912. On Motion for Rehearing, Jan. 18, 1913.)

1. MORTGAGES (§ 378*)—TRUST DEED—TRUSTEE'S SALE—EFFECT ON JUNIOR LIENS.

A regular sale under a trust deed will cut off the equity of redemption of a junior lienholder who, without having tendered the amount of the senior claim before advertisement, files suit for foreclosure and adjustment of equities before the actual sale, but after election by the senior lienor to proceed by trustee's sale and after advertisement made.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1137–1138, 1140; Dec. Dig. § 378.*]

2. APPEAL AND ERROR (§ 1177*)—DECISION— NECESSITY OF REMAND.

Where, in an action by a junior lienor to cancel a trust sale deed, and foreclose his lien, the evidence was conflicting whether he made a timely offer to pay off the debt which the trust deed secured, he was entitled, on reversal of a judgment on a verdict directed in his favor, to have the case remanded, so that this issue could be passed on by a jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4620; Dec. Dig. § 1177.*]

Appeal from District Court, Potter County; Jno. W. Veale, Special Judge.

Action by H. A. Nobles against Hugh Tolleson and others. From judgment for plaintiff, defendants appeal. Reversed and remanded, and rehearing denied.

Barrett & Jones, of Amarillo, for appellants. Crudgington, Works & Umphres, W. E. Gee, Reeder & Dooley, and R. E. Underwood, all of Amarillo, for appellee.

PRESLER, J. This is a suit brought by appellee H. A. Nobles, involving the title to lot No. 17, in block No. 24, G. & S. addition to Amarillo, Potter county, Tex. At the time this controversy arose and prior thereto Hugh Tolleson, appellant, had a senior lien, evidenced by a deed of trust, with I. J. Tolleson as trustee, on the above lot, while H. A. Nobles had a junior lien, evidenced by a deed of trust on said lot, and the other defendants also had subsequent junior liens on the lot in controversy. On July 4, 1911, after due advertisement, the above property was sold at trustee's sale and bid in by Hugh Tolleson, and his deed placed of record. Prior to the sale, but while the advertisement of the sale was being published, the appellee, H. A. Nobles, filed a suit to foreclose his junior lien, bringing in the Tollesons, with their senior lien, as well as the other junior lienholders, as parties defendant, and prayed for foreclosure and adjustment of equities. After the trustee's sale, H. A. Nobles, appellee, filed an amended petition, asking for the same relief, and for cancellation of appellant Hugh Tolleson's trust sale deed. The appellant Hugh Tolleson, among other things, pleaded his title to the lot in question under the trustee's sale, and prayed that he have judgment for title and possession of the same, and that his title be quieted, and that the cloud cast upon the same by the several junior liens asserted be removed. On a trial, with the assistance of a jury, the court peremptorily instructed the jury, among other things, to find for the appellee H. A. Nobles for foreclosure of his second mortgage lien on the lot in controversy, and subsequently entered judgment on the verdict of the jury returned in accordance with said instruction, foreclosing appellee Nobles' lien as a second lien to that of appellant Hugh Tolleson, and foreclosing the liens of the other defendants in order of their adjudged priority, ordered a sale of said lot and the proceeds applied first to the payment of the debt adjudged to be due the appellant Hugh Tolleson and the remainder to the payment of the debts adjudged in favor of the other respective defendants in the order of their adjudged priority of lien, and the remainder of said proceeds, after satisfying said judgments, together with costs, was directed to be paid to the defendant J. M. Clayton, under whom all parties deraign title, by and under their various mortgages from said Clayton, and judgments against him.

[1] From this judgment appellants duly appeal and here seek revision of said judgment. The decisive question in our opinion presented by this appeal is raised by appellant's first assignment of error, which is to the effect that the court erred in his main charge in instructing the jury to find for the plaintiff H. A. Nobles a foreclosure of a mortgage lien on the lot in controversy. In this instruction we think there was error. The law being well settled that a purchaser at a regular sale under the power given in a deed of trust

takes title to the property so purchased free from all the rights and equities of a junior lienholder. The evidence showing that the appellant Hugh Tolleson had a lien on the lot in controversy to secure the payment of a note for $1,000, evidenced by a deed of trust from J. M. Clayton (under whom all parties claim), to I. J. Tolleson, trustee, with the said Hugh Tolleson as beneficiary, providing for 10 per cent. attorney's fees in the event of suit or the note being placed in the hands of an attorney for collection and for 5 per cent. commission for the trustee, and that said lien was a prior and superior lien to all of the other liens claimed by parties to this suit; that there was a trustee's sale of said property, which was regular in all respects, and that at said sale the appellee Hugh Tolleson bid in said property, received a deed from the trustee, and placed the same of record; that the deed of trust provided upon default made in the payment of the note which it was executed to secure for a sale after advertisement upon the election of the beneficiary; that while said property was being advertised, but before a sale made, this suit was filed. Thus the question is substantially presented whether a sale under a deed of trust will cut off the equity of redemption in a junior lienholder, such lienholder having filed a suit for foreclosure and adjustment of equities before the actual sale, but after election made, to proceed by trustee's sale and advertisement made. The principle of law involved appears to be well settled to the effect that such sale, when consummated, concludes the rights of the junior lienholder, who is estopped from maintaining an action to foreclose his junior lien against the purchaser at such sale. In Simpkins on Equity, p. 118, it is stated that: "A sale under a power destroys the right of redemption in a junior mortgagee." In Hampshire v. Greeves, 143 S. W. 147, the Supreme Court of this state says: "The right of sale given in a mortgage is a valuable right acquired by contract inuring to the mortgagee, and cannot be impaired by the subsequent act of the mortgagor with regard to such property. * * * If the junior mortgagee desired to protect such lien, it was his duty and privilege to pay off the prior lien. Not having exercised this privilege where the opportunity has not been denied him, he cannot by suit to foreclose this junior lien under such circumstances deny the right of the holder under foreclosure sale by the trustee to plead such title as a defense." It appears from the evidence that Tolleson had told Nobles that a bid of five cents more than the debt would get the property at the sale, and had told him several times before that all he wanted was his money. Appellee had due notice of the sale but did not bid thereat.

The only authority to which we have been cited deciding the precise question here presented, and, as stated above, that is as to whether the election of the beneficiary to proceed under the deed of trust and his proceeding so to do by advertising the property for sale, concludes the rights of a junior lienholder when such proceedings result in a sale duly made thereunder, but after the filing of suit, is the case of Bedell v. McClellan, 11 How. Prac. 172, from the Supreme Court of New York, in which case the advertisement was first published on the 22d day of May, and on the 23d day of May suit was filed by a junior lienholder, and lis pendens was also filed. Upon this state of facts the court says: "The holder of a mortgage has the right to make his own election as to the mode in which he will enforce it, and he cannot be restrained from proceeding in his way merely because a subsequent incumbrancer prefers a different remedy or even offers to collect the mortgage for him. * * * When it is said that a court of equity has power to restrain proceedings at law when they must necessarily work injustice, it is not meant that an injunction will be issued to suit the convenience of a moving party or to give him control of the sale or to give him time to raise money or to wait for an expected rise in the market value of the property. * * * If on the facts in this case the plaintiffs have a right to stay Husted and assume control of his mortgage, then the right belongs to every subsequent incumbrancer, and the subsequent incumbrancers by a judgment in this case or any one of them have also the right at pleasure to stay the proceedings on both the mortgages that a sale may first be had on one of their executions. * * * If any such right exists, there must be an advantage in being a later rather than a prior incumbrancer—a right hitherto not generally recognized by creditors." The court further observes that the junior lienholder has protection in his right to appear and bid at the sale. We therefore conclude. as hereinbefore indicated, that the court erred in peremptorily instructing the jury as complained of in plaintiff's said first assignment. Simpkins on Equity, p. 118; Maulding v. Coffin, 6 Tex. Civ. App. 416, 25 S. W. 480; Kennard v. Mabry, 78 Tex. 151, 14 S. W. 272; Hampshire v. Greeves (Sup.) 143 S. W. 147; Bedell v. McClellan, 11 How. Prac. (N. Y.) 172.

[2] This cause would be here reversed and rendered but for the contention of appellees that the appellee Nobles prior to the advertisement of said property had made an offer to pay off appellant Hugh Tolleson's debt and claim; and, as the evidence is conflicting as to whether such offer was in fact made, we hold that this was an issue of fact that ought to have been submitted to the jury under proper instructions as to what in law constitutes a tender or offer to pay, and the effect of such offer upon the respective rights of the parties, if found by the jury to have been made.

We therefore conclude that the cause should be here reversed and remanded for a new trial, and it is so ordered.

### On Motion for Rehearing.

HENDRICKS, J. The writer did not participate in the opinion of the court at the time this cause was reversed and remanded, but from a consideration of the record believes that a proper disposition was made of the appeal. The real issue involved whether a tender or a proper offer was made at the time contended for as between Nobles and Tolleson should not have been withdrawn from the jury, and decided by the court in the condition of the testimony. If it were made of a sufficient amount to cover the proper amount owing to Tolleson at that time, plaintiff Nobles could materialize his equity of redemption and the trustee's sale would be inoperative; otherwise, if a proper tender or offer were not made and the proceedings and sale were regular and proper, the trustee's sale would carry the title to the property.

This record suggests two attempts to sell the property at trustee's sale and an abandonment by the beneficiary and trustee of the first proceeding to sell, and further suggests that, if a tender or proper offer were made, it was done during the pendency of the first proceeding and before the readvertisement, or posting of notices under the second proceeding. There is a suggestion in this record that the first proceeding was defective. If so, it may become a material inquiry before the judge and jury in another trial as to the accrual of the trustee's fees at the time the tender was alleged to have been made; or, if not defective, but thereafter abandoned, what would be the effect of the abandonment of the proceedings upon the matter and amount of tender, and the amount due the trustee on account of efforts having been made by him to sell?

We have not the benefit of a brief, nor discussion by able counsel upon this subject. The motion for a rehearing is in all things overruled.